OPINION OF THE COURT
 

 Chief Judge Kaye.
 

 Upon discovering his wife in bed with another man, defendant fatally shot both of them. On appeal from his convictions for second degree murder and first degree manslaughter, defendant argues that he was deprived of a fair trial by exclusion of expert psychiatric testimony and by the court’s charge regarding justification. We disagree with both contentions.
 

 I.
 

 Shortly after their marriage in 1989, defendant and Virginia Pod Berk began to have marital problems. In October 1992,
 
 *260
 
 she initiated divorce proceedings. As a result of their marital discord, defendant spent most evenings at his mother’s house instead of sleeping at their home in Sable Park Court. He did, however, occasionally return to Sable Park Court, where his home office was located.
 

 Defendant also installed an eavesdropping device on their home telephone. On the morning of October 22, 1992, he overheard a telephone conversation between his wife and Police Officer Joseph Valvo, suggesting that the two were having an affair. That evening, defendant went to the Sable Park Court house and found them sitting together in the den. When defendant became upset, his wife insisted that her relationship with Valvo was merely platonic. According to defendant, he ordered Valvo to leave immediately, whereupon Valvo threatened to break his legs.
 

 The following evening, defendant received a telephone call from his wife at his mother’s house. During the conversation, his wife assured him that she was not having an affair with Valvo and said that she needed some time to think about their marriage. They arranged to have brunch that weekend.
 

 Although it was after midnight when their telephone conversation ended, defendant drove to the Sable Park Court home. Upon arriving, he observed Valvo’s car parked in the driveway. Defendant entered the front door, using his key, and climbed the stairs. Hearing sounds emanating from his wife’s bedroom, he retrieved a loaded handgun from his separate bedroom and then walked into her bedroom. When he turned on the light, he saw Valvo and his wife engaged in sexual relations. Defendant fired his gun three times, shooting Valvo in the stomach.
 

 In the meantime, defendant’s wife had escaped to the kitchen, where she called the police. The police operator heard her plead, "don’t kill me,” and a man’s voice — concededly defendant’s — shout, "stop it, stop right there, you son of a bitch, you son of a bitch.” The operator then heard two gunshots. Defendant immediately went to the Amherst police station and surrendered. His wife and Valvo both died from the gunshot wounds.
 

 Defendant was charged with two counts of murder in the second degree. At trial, he admitted shooting Valvo but proffered the defense of justification. According to defendant, he intended only to scare Valvo with the weapon. When he demanded that Valvo leave the house, however, Valvo lunged,
 
 *261
 
 allegedly causing defendant to fear for his life. Valvo grabbed defendant’s arm and, during the ensuing struggle, the gun accidentally fired. Although the trial court charged the jury as to the defense of justification, it denied defense counsel’s request to instruct the jury as a matter of law that the Sable Park Court house was defendant’s "dwelling” and that defendant thus had no duty to retreat, leaving that issue to be determined as a matter of fact.
 

 Defendant further conceded that he must have shot Virginia Berk but testified that he had no memory of doing so. With regard to this charge, he relied on the defense of extreme emotional disturbance.
 

 Several weeks after trial commenced, defense counsel for the first time informed the court and prosecutor of his intention to introduce expert testimony. Specifically, counsel sought to call Dr. Charles Ewing, a forensic psychologist, to testify concerning the relationship between memory loss and traumatic events. Dr. Ewing also planned to testify regarding "fight or flight syndrome” which, according to defense counsel, would explain defendant’s decision to exit the house by the most familiar route — through the kitchen to the garage — rather than the front door.
 

 Defense counsel acknowledged that he never filed notice pursuant to CPL 250.10 informing the prosecutor of this evidence. Counsel claimed, however, that he only recently made the final decision to introduce this testimony and that he immediately informed the prosecutor. Counsel also argued that the statutory notice provision was inapplicable, since Dr. Ewing never examined defendant and, thus, the People were not entitled to perform their own examination. The trial court concluded that the proffered testimony fell within CPL 250.10 and that defendant had failed to show good cause for his failure to provide the People with the requisite notice.
 

 Defendant was convicted of first degree manslaughter of Joseph Valvo and second degree murder of Virginia Berk. The Appellate Division affirmed both convictions, concluding that the justification charge and preclusion of the expert testimony were proper. We now affirm.
 

 II.
 

 Under CPL 250.10 (2), psychiatric evidence is not admissible by the defense at trial "unless the defendant serves upon the people and files with the court a written notice of his intention
 
 *262
 
 to present psychiatric evidence.” Such notice, moreover, "must be served and filed before trial and not more than thirty days after entry of the plea of not guilty to the indictment” (CPL 250.10 [2]). The trial court, however, may allow late notice to be filed prior to the close of the evidence, where it is in the "interest of justice and for good cause shown”
 
 (id.).
 
 The statute further permits the People, upon receiving notice of defense intent to present psychiatric evidence, to seek an order directing the defendant to submit to examination by a psychiatrist or psychologist designated by the People
 
 (see,
 
 CPL 250.10 [3]).
 

 Defendant argues that he was not required to serve the People with notice of his prospective expert testimony because Dr. Ewing never examined defendant and the People were therefore not entitled to conduct an independent examination. According to defendant, CPL 250.10 applies only to psychiatric evidence obtained by means of a psychiatric examination of the defendant. Defendant’s restrictive reading of the statute, however, is not supported by the plain language or the purpose of CPL 250.10.
 

 Prior to 1982, CPL 250.10 required advance notice only of a defendant’s intent to rely upon the insanity defense
 
 (see,
 
 CPL 250.10 [amended by L 1982, ch 558, § 9];
 
 see also,
 
 former Code Crim Pro § 336). In amending CPL 250.10 in 1982, the Legislature expanded the scope of the notice requirement to encompass evidence offered in support of the affirmative defense of extreme emotional disturbance as well as any other defense. Subdivision (1) of the statute now broadly defines "psychiatric evidence” subject to notice as follows:
 

 "(a) Evidence of mental disease or defect to be offered by the defendant in connection with the affirmative defense of lack of criminal responsibility by reason of mental disease or defect.
 

 "(b) Evidence of mental disease or defect to be offered by the defendant in connection with the affirmative defense of extreme emotional disturbance * * *
 

 "(c) Evidence of mental disease or defect to be offered by the defendant in connection with any other defense not specified in the preceding paragraphs” (CPL 250.10 [1]).
 

 As explained by the Practice Commentaries, when the Legislature amended section 250.10, "it neglected to unlink
 
 *263
 
 the definition of 'psychiatric evidence’ from the term 'mental, disease or defect’; which, as used in criminal actions, has been associated solely with the defense of lack of criminal responsibility” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 250.10, at 331). Thus, Penal Law § 40.15 also employs the phrase "mental disease or defect” in defining the defense of lack of criminal responsibility, or the insanity defense.
 
 [1]
 
 The Legislature, however, expressly included within the definition of "psychiatric evidence” contained in section 250.10 evidence offered in connection with the affirmative defense of extreme emotional disturbance — "a mental infirmity not arising to the level of insanity”
 
 (People v Patterson,
 
 39 NY2d 288, 302,
 
 affd
 
 432 US 197).
 

 Clearly, then, the term "mental disease or defect” as used in CPL 250.10 necessarily includes mental infirmities that would not sustain an insanity defense. Nothing in the statutory definition, moreover, limits the pretrial notice requirement to "psychiatric evidence” resulting from examination of the defendant. Rather, the plain language of the statute requires that any evidence regarding a mental disease or defect offered in relation to the defense of extreme emotional disturbance or any other defense be preceded by timely notice to the People. Surely that includes expert testimony regarding the psychological impairment that results from a traumatic experience— such as impaired memory or a trauma syndrome — when such testimony is offered to support the affirmative defense of extreme emotional disturbance, irrespective of whether the expert actually examined the defendant.
 

 This conclusion is reinforced by the purpose of the statutory notice provision: to "prevent disadvantage to the prosecution as a result of surprise”
 
 (see, Ronson v Commissioner of Correction,
 
 463 F Supp 97, 103,
 
 affd
 
 604 F2d 176). As explained in the Legislative Memoranda accompanying the original notice provision (former Code Crim Pro § 336):
 

 
 *264
 
 "At present, there is no provision in the Code requiring notice that the defendant intends to present evidence of mental disease or defect. In fact, he may offer such evidence under a plea of not guilty without the specification of insanity and, if the defense is sustained, the jury may acquit. This, obviously, may place the People at an unfair disadvantage in that, surprised by the sudden interposition of this collateral defense, they may have insufficient opportunity to obtain the psychiatric and other evidence necessary to refute it and to establish, as they must, the defendant’s sanity beyond a reasonable doubt. The bill would rectify this situation” (Mem of Commn on Revision of Penal Law and Crim Code following L 1963, ch 595 [reprinted in 1963 McKinney’s Session Laws of NY, at 1986]).
 

 This statement of legislative intent manifestly establishes that the primary aim of the pretrial notice requirement was to ensure the prosecution sufficient opportunity "to obtain the psychiatric
 
 and other evidence necessary
 
 to refute” the proffered defense of mental infirmity
 
 (id.)
 
 (emphasis added). In other words, the notice provision was designed to allow the prosecution an opportunity to acquire relevant information from any source — not merely from an independent examination of the defendant — to counter the defense.
 

 Indeed, under the Code, the only authority for the court to order a psychiatric examination of the defendant upon request of the People was contained in a discrete statutory provision.
 
 [2]
 
 It was not until CPL 250.10 was amended in 1980 that this right was specifically incorporated into the body of the notice statute
 
 (see,
 
 L 1980, ch 548, § 7).
 

 To be sure, this Court has recognized that the prosecutor’s right to examine the defendant independently where the defendant has raised the issue of mental competence is grounded in principles of fairness and is essential to preserving the in
 
 *265
 
 tegrity of the fact-finding process
 
 (see, People v Segal,
 
 54 NY2d 58, 65). Furthermore, the provision for independent examination coupled with the 30-day notice provision enables the People to have defendant examined by their own experts within close temporal proximity to the offense and to any examination by the defense experts, thereby preventing disadvantage to the prosecution in accord with the legislative goal. Pretrial examination by the prosecution further avoids delay during trial, an additional purpose of the current notice statute
 
 (see,
 
 Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 250.10, at 332).
 

 Even where mental health evidence did not derive from examination of the defendant, however, advance notice to the People similarly promotes fairness and avoids delay by allowing the prosecution to obtain its own mental health evidence prior to trial. Undeniably, testimony concerning mental impairment or trauma syndrome by an expert who never examined the defendant can be equally, if not more, damaging to the prosecution’s case as testimony from an examining doctor.
 

 Thus, while a primary function of CPL 250.10 is certainly to afford the People an opportunity to conduct their own examination of defendant, the legislative history of CPL 250.10 overwhelmingly establishes that it is not the statute’s exclusive purpose. Inasmuch as the notice requirement was designed to allow the People an opportunity to obtain
 
 any
 
 mental health evidence necessary to refute a defense of mental infirmity, it follows that it applies to
 
 any
 
 mental health evidence to be offered by the defendant in connection with such a defense.
 

 Here, defendant sought to introduce expert testimony by a forensic psychologist regarding a trauma syndrome known as "fight or flight” and impairment of memory following traumatic events in connection with his defense of extreme emotional disturbance. This evidence fell within the scope of CPL 250.10 and was inadmissible unless defendant served written notice within 30 days of his plea of not guilty to the indictment. This he failed to do.
 

 Defendant alternatively argues that the trial court’s refusal to allow late notice and introduction of the mental health evidence constituted an abuse of discretion that violated his constitutional right to present a defense. We disagree.
 

 The decision whether to allow a defendant, "[i]n the interest of justice and for good cause shown,” to serve and file late no
 
 *266
 
 tice of intent to introduce psychiatric evidence is a discretionary determination to be made by the trial court (CPL 250.10 [2]; see,
 
 People v Di Donato,
 
 87 NY2d 992). The trial court’s discretion in this matter, however, is not absolute. Exclusion of relevant and probative testimony as a sanction for a defendant’s failure to comply with a statutory notice requirement implicates a defendant’s constitutional right to present witnesses in his own defense
 
 (see,
 
 US Const 6th, 14th Amends;
 
 see also, Ronson v Commissioner of Correction,
 
 604 F2d 176, 178,
 
 supra).
 
 In making its determination, the trial court must therefore weigh this right against the resultant prejudice to the People from the belated notice.
 

 Certainly, the fact that Dr. Ewing never examined defendant minimized the prejudice to the People here, since they were not deprived of an opportunity to conduct their own pretrial examination shortly after the offense. The People were nonetheless entitled to obtain their own expert to assess and possibly refute Dr. Ewing’s conclusions regarding loss of memory or "fight or flight” trauma. Defendant, moreover, failed to offer any explanation other than indecision for waiting until near the end of trial to notify the court and prosecutor of Dr. Ewing’s testimony.
 

 Under these circumstances, the trial court did not abuse its discretion in precluding the expert psychiatric testimony.
 
 [3]
 

 III.
 

 Defendant further contends that it was error for the trial court to refuse to instruct the jury as part of its justification charge that the Sable Park Court residence was defendant’s "dwelling” as a matter of law.
 

 Under certain circumstances, the use of deadly physical force upon another person is lawful, or justified, where the defendant reasonably believed such force necessary to defend against what he or she reasonably believed to be the use or imminent use of deadly physical force by the other person
 
 (see,
 
 Penal Law § 35.15). This defense is unavailable to a defendant who "knows that he can with complete safety as to himself and others avoid the necessity of [using deadly physical force] by retreating” (Penal Law § 35.15 [2] [a]). A defendant who is "in his dwelling and not the initial aggressor,” however, has no such duty to retreat (Penal Law § 35.15 [2] [a] [i]).
 

 
 *267
 
 Article 35 of the Penal Law, which addresses the defense of justification, provides no definition of the term "dwelling.” The term is defined for purposes of burglary and related offenses in Penal Law § 140.00 (3) as "a building which is usually occupied by a person lodging therein at night.” The Sable Park Court residence unquestionably met this definition of a dwelling.
 

 In order for defendant to be relieved of the duty to retreat, however, the Sable Park Court home must have been
 
 his
 
 dwelling (see, Penal Law § 35.15 [2] [a] [i]). Here this constituted a disputed factual question to be decided by the jury. Indeed, there was substantial evidence at trial both supporting and opposing a conclusion that the Sable Park Court home was defendant’s dwelling on the date of the shootings. Consequently, it was not error for the court to deny defendant’s request to instruct the jury that he had no duty to retreat because the residence was his dwelling.
 

 Accordingly, the order of the Appellate Division should be affirmed.
 

 Judges Simons, Titone, Bellacosa, Smith, Levine and Ciparick concur.
 

 Order affirmed.
 

 [1]
 

 . Under Penal Law § 40.15,
 

 "it is an affirmative defense that when the defendant engaged in the proscribed conduct, he lacked criminal responsibility by reason of mental disease or defect. Such lack of criminal responsibility means that at the time of such conduct, as a result of mental disease or defect, he lacked substantial capacity to know or appreciate either:
 

 "1. The nature and consequences of such conduct; or
 

 "2. That such conduct was wrong.”
 

 [2]
 

 . Section 658 of the former Code of Criminal Procedure provided: "If at any time before final judgment it shall appear to the court having jurisdiction of the person of a defendant indicted for a felony or a misdemeanor that there is reasonable ground for believing that such defendant is in such state of idiocy, imbecility or insanity that he is incapable of understanding the charge, indictment or proceedings or of making his defense, or if the defendant makes a plea of insanity to the indictment, instead of proceeding with the trial, the court, upon its own motion, or that of the district attorney or the defendant, may in its discretion order such defendant to be examined to determine the question of his sanity” (repealed by L 1970, ch 996).
 

 [3]
 

 . We do not reach the People’s unpreserved argument that the proposed "fight or flight” syndrome testimony was inadmissible because defendant failed to establish its relevancy.