People v Diaz (2004 NY Slip Op 24076)

People v Diaz

2004 NY Slip Op 24076 [3 Misc 3d 686]

March 15, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Tuesday, August 3, 2004

[*1]
The People of the State of New York, Plaintiff,
v
Teofilo Diaz, Defendant.
Supreme Court, Kings County, March 15, 2004

APPEARANCES OF COUNSEL

Theodore M. Herlich, New York City, for defendant. Charles J. Hynes, District Attorney, Brooklyn (Michelle Kaminsky of counsel), for plaintiff.

{**3 Misc 3d at 687} OPINION OF THE COURT

John M. Leventhal, J. 
This decision determines the legitimacy of the court's order permitting the prosecution to have the defendant examined by a People's psychiatric expert and establishes the parameters of the expert's testimony.
In deciding this matter, the court has considered all prior proceedings, the defendant's memorandum, supplemental memorandum, oral arguments, and copies of the briefs submitted to the Court of Appeals in People v Smith (1 NY3d 610 [2004]).

Background

On June 4, 2000, the defendant strangled his former girlfriend (called by the defendant his "common-law wife," i.e., victim). For this crime the defendant has been indicted on various homicide counts and related crimes.
On February 18, 2004, the parties stated that they were ready for trial and the court instructed a court officer to go to the jury pool courtroom and obtain a jury panel. While the court was waiting for the panel to arrive, the People made a Molineux (People v Molineux, 168 NY 264 [1901]) application. In argument, the prosecutrix claimed that the defendant had been incarcerated for a lengthy period of time because of a prior assault on the victim and that two weeks before the homicide, the defendant was released from jail. The People claimed that the underlying facts of the prior assault and defendant's lengthy incarceration provided the defendant with a motive for the killing and showed his intent to murder the victim.
Prior to deciding the application, the court informed defense counsel that in order to comply with the balancing test of Molineux, the defendant would have to alert the court of his defense in the case. Defense counsel stated that the defendant was not denying that he had killed or that he intended to murder the victim, but claimed that the murder was done under circumstances evincing "extreme emotional disturbance (E.E.D.)."
The People immediately objected to any evidence of E.E.D. as the defendant had failed to serve written notice (CPL 250.10 [1] [b]; People v Berk, 88 NY2d 257 [1996]). The defense counsel argued that he was not required to give notice because the only person he intended to call as a witness regarding E.E.D. was the defendant. Defense counsel then proceeded to argue that because only lay testimony on the mental state defense was being{**3 Misc 3d at 688} offered, notice was not required. The prosecutrix [*2]vigorously disagreed. The court noted that in the morning's New York Law Journal the Court of Appeals refused to decide the issue of the necessity of giving pretrial notice when only nonexpert testimony is being offered by a defendant (People v Smith, 1 NY3d 610 [2004]). This court then directed the defendant to file a late notice of intent. The court (a) found that the defendant's failure to file a notice was not a willful failure, (b) stated that it was concerned that if it precluded the defense of E.E.D. on the ground of failure to file a notice of intent, and if the defendant were to be convicted of murder in the second degree, the United States Circuit Court of Appeals, Second Circuit, would grant habeas corpus relief based on its prior precedents (Bohan v Kuhlmann, 66 Fed Appx 277 [2d Cir 2003]; Noble v Kelly, 246 F3d 93, 98-100 [2001]; Escalera v Coombe, 852 F2d 45, 48 [1988]),[FN1]

and (c) authorized a late filing of the notice.
Thereafter, the prosecution requested that the defendant be examined by their expert as to the viability of the affirmative defense of E.E.D. The defendant objected contending that the People were not entitled to have the defendant examined by their expert based on the assertion that only his testimony was going to be offered to establish E.E.D., and that such testimony is lay testimony.
The court then disbanded the jury panel (which had arrived) and adjourned the matter to February 20, 2004 for submission of a notice of intent and oral argument on the issues. On that date, the defendant filed a notice of intent to present the E.E.D. defense and a memorandum of law. The court also heard oral argument.
At oral argument, the defense counsel conceded that the court was correct in ordering service of the notice of intent, but objected to the psychiatric examination by the People's expert. The defendant cited People v Morgan (178 Misc 2d 554 [1998]) for the proposition that the People are not entitled to a psychiatric examination where only lay testimony is offered even though the defendant must serve notice of intent. The Morgan court held that requiring the defendant to undergo an examination by the People's expert, where only nonexpert testimony is offered, violates the defendant's Fifth Amendment right against compelled self-incrimination. The defendant also indicated that the {**3 Misc 3d at 689}court in People v Irwin (182 Misc 2d 113 [1999]) disagreed with Morgan and held that the prosecution is entitled to a psychiatric examination even though the defendant is only presenting nonexpert testimony and that such examination does not violate the Fifth Amendment right against compulsory self-incrimination.[FN2]

The court adjourned the matter, directed that the examination proceed, and stated that the court would determine the admissibility and permissible scope of the People's expert's testimony. This decision explains the court's action and determines the unresolved issues in the case.

Extreme Emotional Disturbance

Penal Law § 125.25 (1) (a) provides for a reduction of the crime of murder in the second degree to manslaughter in the first degree if the defendant proves by a preponderance of the evidence that the [*3]homicidal act was committed under "extreme emotional disturbance." The "affirmative defense has two components: an objective element requiring sufficient proof that there was a reasonable explanation or excuse for the emotional disturbance, and a subjective element requiring sufficient proof that the conduct was influenced by an extreme emotional disturbance at the time the alleged crime was committed" (People v White, 79 NY2d 900, 903 [1992]). In order to establish the affirmative defense, the defendant must prove a "mental infirmity" not arising to the level of insanity (People v Patterson, 39 NY2d 288, 302 [1976], affd 432 US 197 [1977]; Smith, 1 NY3d 610 [2004]). Absent proof of a "mental infirmity" the defendant would not be entitled to an E.E.D. jury instruction (People v Roche, 98 NY2d 70, 76 [2002]). The proof of "mental infirmity" can be established without the testimony of either a psychiatrist or psychologist (Roche, 98 NY2d at 76; People v Moye, 66 NY2d 887, 890 [1985]). However, anger and embarrassment are not emotions which would support the affirmative defense of "extreme emotional disturbance" (People v Walker, 64 NY2d 741, 743 [1984]; People v Binkley, 278 AD2d 124, 124 [2000]; People v Reeves, 163 AD2d 590, 590 [1990]).{**3 Misc 3d at 690}

CPL 250.10

CPL 250.10 (2) states that "psychiatric evidence" is not admissible unless the defendant serves a written notice of intent to offer such testimony. CPL 250.10 (1) (b) defines the term "psychiatric evidence" as:
"Evidence of mental disease or defect to be offered by the defendant in connection with the affirmative defense of extreme emotional disturbance as defined in paragraph (a) of subdivision one of section 125.25 of the penal law and paragraph (a) of subdivision two of section 125.27 of the penal law."
The words "mental disease and defect" used in this statute include "mental infirmities" not rising to the level of insanity (People v Almonor, 93 NY2d 571, 578 n 3 [1999]; Berk, 88 NY2d at 263).
In defining the term "psychiatric evidence," the statute uses the term "evidence" without any adjective. The plain reading of the definition of "psychiatric evidence" indicates that it refers to evidence from whatever the source (expert or otherwise).
In this regard, the court agrees with Morgan (178 Misc 2d at 556-558), relied upon by the defendant, that notice is required whenever the E.E.D. defense is offered whether by way of expert or lay testimony (see also People v Rivers, 281 AD2d 348, 348 [2001]).
This court is aware that when the Court of Appeals uses the term "psychiatric evidence," the Court is speaking of expert testimony (see People v Sullivan, 39 NY2d 903, 904-905 [1976]). However, words used in a decision may have a different meaning than when used in a statute (see People v Baskerville, 60 NY2d 374, 382 [1983]).
CPL 250.10 (3) states that after a defendant serves notice of intent to present "psychiatric evidence," the People may request that the defendant be examined by a psychiatrist or a licensed psychologist.
CPL 250.10 (5) provides that if the defendant fails to cooperate with the prosecution's expert, then the court may preclude the defendant from introducing expert testimony but the court cannot [*4]preclude "other" evidence.[FN3]

Whether or not the statute authorizes the court to order an examination of the defendant by a mental health expert designated {**3 Misc 3d at 691}by the People where the defendant offers lay testimony is irrelevant to the court's decision. The court is authorized to order such an examination by its "inherent power" to achieve justice (People v Segal, 54 NY2d 58, 65 [1981]; United States v McSherry, 226 F3d 153, 156 [2000]; United States v Webster, 162 F3d 308, 339 [1998]).
Before exercising this power, the court must examine the constitutional issues involved in such a decision.[FN4]

No New York court has analyzed the statute under post-Lee United States Supreme Court precedent and its progeny. The Fifth Amendment issue involved in a prosecution's examination of a defendant has been only briefly touched upon or ignored by the appellate courts in New York.

Fifth Amendment Jurisprudence

The Fifth Amendment to the United States Constitution prohibits the government from compelling a person to give testimony against him or herself.
On January 14, 1971, the Court of Appeals decided Lee (27 NY2d 432 [1971]). In Lee, the defendant, in a prior trial, had interposed a defense of insanity. At the prior trial, the defendant introduced expert testimony with regard to the insanity defense. Before the retrial of Lee's case, the lower court ordered the defendant to undergo a psychiatric examination by a People's expert. Lee refused to cooperate with the People's examiner on the ground that any statement made to the government's agent would incriminate him. Because of Lee's refusal, the trial court precluded Lee from presenting an insanity defense. Lee commenced a CPLR article 78 proceeding against the government. The Appellate Division denied relief and the case was presented to the Court of Appeals.
The Court of Appeals made numerous holdings. The Court extensively discussed the Fifth Amendment to the United States Constitution. There is nothing in Lee to indicate that the Court considered the New York State Constitution. The Court rejected an argument made by the People, that the prosecution's examination did not violate the Constitution because the examination was nontestimonial (27 NY2d at 439). The Court ruled that the psychiatric examination requires verbal communications between{**3 Misc 3d at 692} the defendant and the mental health expert and, thus, the expert's testimony is based upon testimonial evidence given by the defendant (id.). The Court then conducted a balancing of rights and concluded that it would be unfair to permit the defendant to claim insanity and preclude the People from obtaining psychiatric evidence from the defendant (id. at 439-441). The Court upheld the order that the defendant undergo a psychiatric examination by a person designated by the government.
The Lee court also ruled that the preclusion of the defense of insanity because of the lack of [*5]cooperation was improper (id. at 442-443). The Court ruled that the defendant can be precluded from introducing expert testimony on the issue of insanity, but cannot be precluded from introducing "other" testimony to establish the insanity defense.
In Sullivan (39 NY2d 903 [1976]), the Court observed that where a defendant fails to cooperate with the government's psychiatric expert, the People may still have a psychiatrist or psychologist testify as to the expert's observations of the defendant in the courtroom and testify on the basis of facts that were adduced at trial (id. at 904-905).[FN5]

On May 18, 1981 (a decade after Lee), the United States Supreme Court decided Estelle v Smith (451 US 454 [1981]). In Smith, the Court ruled that testimony by a government psychiatrist that the defendant was a dangerous person, which was based upon a court ordered interview of the defendant which was neither requested nor consented to by the defendant, violated the defendant's Fifth Amendment rights. In Smith, the defendant did not present a mental status defense or present any expert testimony. The United States Supreme Court observed, however, that (id. at 465)
"Nor was the interview analogous to a sanity examination occasioned by a defendant's plea of not guilty by reason of insanity at the time of his offense. When a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he interjected into the case. Accordingly, several Courts of Appeals have held that, under such circumstances, a defendant can be required to submit to a sanity examination conducted by the prosecution's psychiatrist."{**3 Misc 3d at 693}
Ever since this observation, courts have taken this statement to mean that the Fifth Amendment does not prohibit an examination of the defendant by the government where a mental status defense has been interposed and the defendant presents expert testimony to bolster such a defense.
On June 24, 1987, the United States Supreme Court decided Buchanan v Kentucky (483 US 402 [1987]). In Buchanan, the Court held that the prosecution's use, in rebuttal, of defendant's statements made to his own expert did not violate the Fifth Amendment. The Court stated (id. at 422-423): "This statement logically leads to another proposition: if a defendant requests such an evaluation or presents psychiatric evidence, then, at the very least, the prosecution may rebut this presentation with evidence from the reports of the examination that the defendant requested."
The Court further emphasized that the evidence was introduced in rebuttal and not on the government's direct case (at 422).
On July 3, 1989, the Court decided Powell v Texas (492 US 680 [1989]). In Powell, the Court vacated a death sentence on the ground that the use of a government psychiatrist's interview at the sentencing phase of the trial violated the defendant's Sixth Amendment right to counsel. In [*6]discussing the Fifth Amendment issue, the Court stated (at 684):
"Language contained in Smith and in our later decision in Buchanan v Kentucky, 483 U. S. 402 (1987), provides some support for the Fifth Circuit's discussion of waiver. In Smith we observed that '[w]hen a defendant asserts the insanity defense and introduces supporting psychiatric testimony, his silence may deprive the State of the only effective means it has of controverting his proof on an issue that he has interjected into the case.' 451 U. S., at 465. And in Buchanan the Court held that if a defendant requests a psychiatric examination in order to prove a mental-status defense, he waives the right to raise a Fifth Amendment challenge to the prosecution's use of evidence obtained through that examination to rebut the defense. 483 U. S., at 422-423." (Emphasis supplied.)
This court has been unable to find a single New York case discussing the effects of these United States Supreme Court decisions on Lee. It is important to note that this court is bound to follow the Fifth Amendment analysis of the United States Supreme {**3 Misc 3d at 694}Court and not the Court of Appeals in Lee (People v Kin Kan, 78 NY2d 54, 59 [1991]). Further, while a state court may give greater rights under the state's constitution, a state cannot give greater rights than the United States Supreme Court in a matter of federal law (Arkansas v Sullivan, 532 US 769, 772 [2001]; Oregon v Hass, 420 US 714, 719 n 4 [1975]).
Additionally, the Supreme Judicial Court of Massachusetts in Blaisdell v Commonwealth (372 Mass 753, 364 NE2d 191 [1977]) held that when the Fifth Amendment is applicable, balancing the State's interest in obtaining evidence to facilitate its burden is improper (372 Mass at 761, 364 NE2d at 197-198). This ruling was based on the post-Lee United States Supreme Court decision in United States v Watson (423 US 411 [1976]). This calls into question the underlying reasoning of the Lee decision.
This court agrees with the Massachusetts court. Because of the very nature of the right against self-incrimination (i.e., preventing compelled self-incrimination), governmental necessity for evidence cannot override the Fifth Amendment. The necessity for obtaining evidence is not a basis for abdicating a defendant's right against compelled self-incrimination.
In order to determine the defendant's constitutional rights, this court will now examine how other jurisdictions have dealt with this issue under the Federal Constitution.

Other Jurisdictions

All jurisdictions seem to agree that the mere filing of a notice of intent to offer a mental status defense does not bar the defendant from asserting his or her Fifth Amendment rights (United States v Hall, 152 F3d 381, 398 [1998]; State v Syvertson, 597 NW2d 652, 663, 1999 ND 134, ¶ 36 [1999]; Blaisdell, 372 Mass at 764-765, 364 NE2d at 199-200; Commonwealth v Sartin, 561 Pa 522, 528, 751 A2d 1140, [*7]1143 [2000]).[FN6]

Additionally, all jurisdictions seem to read Buchanan as requiring that a mental status defense must be presented at trial before the People are permitted to present evidence of a mental health expert (Hall, 152 F3d at 398-400; Blaisdell, 372 Mass at 766-768, 364 NE2d at 200-202; Lagrone v State, 942 SW2d 602, 611-612 [Tex 1997]; State v Reid, 981 SW2d 166, 177 [Tenn 1998]). Nonetheless, a pretrial examination is authorized (id.; see also Hartless v State, 327 Md 558, 571-572, 611 A2d 581, 587 [1992]).{**3 Misc 3d at 695}
It is universally accepted that where a defendant introduces expert testimony of his or her mental status then the People's subsequent introduction of an expert's testimony which is based on the defendant's statement does not violate the Fifth Amendment. However, there is no consensus as to the legal reasoning as to why the Fifth Amendment is not violated by such evidence (Hollis v Smith, 571 F2d 685, 690-692 [1978]; United States v Byers, 740 F2d 1104, 1111-1114 [1984]; Hartless, 327 Md at 564-565, 611 A2d at 584; McNeill v Fulcomer, 753 F Supp 1294, 1299 n 10 [1990]all collecting cases and theories).
All the cases that the court has examined, with the exception of two, have involved cases where the defendant had a mental health expert testify at trial. Only two cases discuss the propriety of a prosecution's expert's examination where a defendant presents a mental status defense by nonexpert testimony. In those cases, the courts ruled that granting a governmental examination when only lay testimony will be offered by the defendant violates the defendant's Fifth Amendment right against self-incrimination (Brown v Butler, 876 F2d 427 [1989]; Abernathy v State, 265 Ga 754, 754-755, 462 SE2d 615, 616-617 [1995]).[FN7]

Unfortunately, neither court explains its reasoning. However, the reasoning of the United States Circuit Court of Appeals, Fifth Circuit, can be gleaned from some of the other decisions from that Circuit.
Most jurisdictions, including the United States Circuit Court of Appeals, Fifth Circuit, adopt the waiver theory (Battie v Estelle, 655 F2d 692, 701-702 [5th Cir 1981]; Commonwealth v Wayne W., 414 Mass 218, 230-231, 606 NE2d 1323, 1331 [1993]; Soria v State, 933 SW2d 46, 57-58 [Tex 1996]). The waiver theory's logic is that when a defendant's mental health expert testifies, that expert is basing his or her professional opinion on verbal communications with the defendant. The jury is thus hearing the defendant's version as if the defendant were actually testifying. When a defendant testifies he or she waives the right against self-incrimination. These courts will not permit the defendant to have his or her words heard by the jury through the expert without waiving his Fifth Amendment rights (id.).
Given this logic, it is understandable that when a lay witness establishes a mental status defense, the defendant's right against {**3 Misc 3d at 696}self-incrimination is not waived, because the nonexpert is not testifying to matters that the defendant related verbally to the lay witness, but is relating the witness' observations.
Underlying the above logic is that when a defendant testifies he waives his Fifth Amendment [*8]rights (see Fitzpatrick v United States, 178 US 304, 315 [1900]; Reagan v United States, 157 US 301, 304-305 [1895]; see also Brown v United States, 356 US 148, 155 [1958]).

Decision on Prosecutor's Examination

New York also holds that when a defendant testifies he waives his Fifth Amendment right as to any topic relevant to guilt or innocence (People v Hopkins, 58 NY2d 1079, 1083 [1983]; People v Shapiro, 308 NY 453, 458 [1955]; People v Tice, 131 NY 651, 655-657 [1892]; cf. People v Betts, 70 NY2d 289, 295 [1987]). In this case, if the defendant testifies as to his mental state at the time of the crime, he will have waived his Fifth Amendment rights on this issue.
Also, it should be noted that even if the court had not ordered the examination, the People could have had a mental health expert sit in the courtroom while the defendant testified, cross-examined the defendant as to questions relevant to the expert's opinion and then could have called the expert to testify (see Sullivan, 39 NY2d at 904-905). Thus, the examination could be conducted in front of the jury.
In contrast, when the court grants the People a pretrial examination, the government's expert, after completing the examination, must submit a report to the prosecution and defense counsel. Defense counsel will then be aware of the expert's opinion and can make a more intelligent decision as to how to proceed and how to present his E.E.D. defense.
The court finds that the court ordered examination was constitutional and did not violate defendant's right against self-incrimination. The expert's testimony will only be admitted after the defendant has in fact waived his Fifth Amendment right by testifying to a mental state or to facts from which the jury can infer a mental state defense.

Use of Facts Learned from the Court Ordered Examination

CPL 60.55 (2) as is relevant reads:
"2. Any statement made by the defendant to a psychiatrist or licensed psychologist during his examination of the defendant shall be inadmissible in evidence{**3 Misc 3d at 697} on any issue other than that of the affirmative defense of lack of criminal responsibility, by reason of mental disease or defect. The statement shall, however, be admissible upon the issue of the affirmative defense of lack of criminal responsibility by reason of mental disease or defect, whether or not it would otherwise be deemed a privileged communication. Upon receiving the statement in evidence, the court must instruct the jury that the statement is to be considered only on the issue of such affirmative defense and may not be considered by it in its determination of whether the defendant committed the act constituting the crime charged."
CPL 60.55 is limited to defendants who claim insanity and does not apply to other mental state defenses (People v Angelo, 88 NY2d 217, 222 [1996]). Thus from a statutory perspective, there is no bar to using the defendant's statement made to a psychiatrist if the defense is other than insanity.
[*9]
In People v Cobo (245 AD2d 72, 73 [1997]), the Appellate Division, First Department, held that a defendant, who presented a battered spouse syndrome defense, was properly impeached by his statement to the government's psychologist. The Court did not discuss the Fifth Amendment problem or the statement in Lee (27 NY2d at 441-442) that the expert's testimony is limited to the mental state and to no other purpose.
In this regard it is observed that statements taken in violation of the Fifth Amendment may be used against a defendant for impeachment purposes provided they were not coerced (New Jersey v Portash, 440 US 450, 458-459 [1979]; Harris v New York, 401 US 222 [1971]). The issue then is whether a court ordered examination is coercion such as to preclude cross-examination on statements given to an expert.
In People v Jackson (244 AD2d 757, 758 [1997]), the Appellate Division, Third Department, reiterated the long-standing rule that when a criminal defendant places his mental state in issue, whether by an insanity defense or otherwise, the People's expert is limited to testifying to the mental state issue and no other (citing Lee).
Jurisdictions outside of New York have ruled that any use of the information obtained by the government's expert from the defendant other than on the mental state issue violates the Fifth Amendment (State v Fair, 197 Conn 106, 110-111, 496 A2d 461, 464 [1985]; Syvertson, 597 NW2d at 663, 1999 ND 134, {**3 Misc 3d at 698}¶ 37 [1979]; Nance v State, 272 Ga 217, 219-220, 526 SE2d 560, 564-565 [2000]; State v Martin, 950 SW2d 20, 24 [Tenn 1997]; Gibson v Zahradnick, 581 F2d 75, 78 [1978]).[FN8]

At this stage in the proceeding, the court need not decide whether the People can use a statement made to the government's expert for impeachment purposes. The defendant is now on notice of this possibility.
At this stage, the court will limit the prosecution's use of defendant's statements given to the mental health expert to the issue of "extreme emotional disturbance" and no other use.

Footnotes

Footnote 1: Those cases establish that it is unconstitutional to preclude a defense unless the failure to give notice of such defense was a willful act designed to gain a tactical advantage.

Footnote 2: Defense counsel's behavior in calling to the court's attention a contrary decision is in the highest tradition of ethical behavior (see Code of Professional Responsibility DR 7-106 [b] [22 NYCRR 1200.37 (b)]; Code of Professional Responsibility EC 7-21; People v Whelan, 165 AD2d 313, 324 n 3 [1991]; Matter of Cicio v City of New York, 98 AD2d 38, 40 [1983]; see discussion in United States v Gaines, 295 F3d 293, 302 [2002]).

Footnote 3: The current statute is virtually a verbatim restatement of the 1971 Court of Appeals decision in Matter of Lee v County Ct. of Erie County (27 NY2d 432 [1971]). There have been a few minor changes.

Footnote 4: Although the court has already exercised its power in this regard, the court must determine the legitimacy of such grant, and if not proper to prohibit introduction of such evidence. The court ordered the examination pending this decision in order to expedite the trial.

Footnote 5: Sullivan was decided on June 10, 1976.

Footnote 6: The court will not cite every case supporting this court's legal propositions. The court has selected certain typical cases.

Footnote 7: The wording in People v Kruglik (256 AD2d 592, 593 [1998]) also supports the theory that a waiver of the Fifth Amendment only occurs when the defendant offers "expert psychiatric evidence."

Footnote 8: These rulings are based on certain words contained in Smith (451 US at 468-469). The court is also aware of the comment made by the Court of Appeals in the context of the use of an alibi notice (see People v Brown, 98 NY2d 226, 234 [2002]).