■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GARY GRACIUS, Appellant. [774 NYS2d 534]—

Judgment, Supreme Court, New York County (Carol Berkman, J.), rendered December 7, 2001, convicting defendant, after a jury trial, of attempted rape in the first degree and attempted sexual abuse in the first degree, and sentencing him, as a second felony offender, to concurrent terms of 8 years and 2 to 4 years, respectively, unanimously reversed, on the law, the facts and as a matter of discretion in the interest of justice, and the matter remanded to the Supreme Court for a new trial before a different justice.

After viewing a horror/supernatural video cassette on the morning of January 10, 2001, defendant, a Haitian immigrant, became fixated with the irrational idea that if he stripped off his clothing and left his eighth-floor apartment located in a multi-unit residential apartment building, he would be reunited with his estranged family. The emotionally distraught defendant then left his apartment, removed all of his clothing in a common hallway and entered an elevator where he encountered the elevator's sole passenger, the female complainant. Defendant, who was holding his penis in one hand and the video cassette and VCR remote control in his other, entered the elevator and pressed the "Lobby" button. As the complainant attempted to leave the elevator, defendant, who apparently believed that the complainant was delaying his objective to be reunited with his family, frantically blocked her exit, pushed her to the floor and dragged her back inside the elevator. As the elevator began to descend, the complainant began to push the elevator's buttons in an effort to flee. A struggle ensued and defendant, in an apparent effort to calm the frightened complainant and to prevent her from further delaying his "family reunion," climbed on top of her, grabbing the collar of her coat and pulling on her scarf. Before reaching the lobby, the elevator opened on the fourth floor and, as the complainant tried to flee, defendant again forcibly pulled her back into the elevator and pushed the "Lobby" button. As the elevator's doors closed, the hysterical complainant began to scream as her struggle with defendant resumed. Upon reaching the lobby, the complainant kicked defendant who then fled the apartment building, running directly to a nearby parked police scooter to seek aid. Defendant sat on the scooter awaiting the police officer's return. As the police officer approached the naked defendant, he attempted to hug her and made some incoherent statements regarding the incident in the elevator. Defendant was later arrested and charged with one count each of attempted rape in the first degree and attempted sexual abuse in the first degree.

After a competency hearing pursuant to CPL article 730, defendant was found unfit to stand trial and was remanded to a psychiatric facility for treatment. After five months of psychiatric treatment and antipsychotic drug therapy, and after another hearing, defendant was found competent to stand trial on June 6, 2001 and was later arraigned on that date. The matter was set for trial to commence on August 22, 2001.

On July 30, 2001, defense counsel notified the prosecution, by written letter, of its intent to proffer psychiatric evidence pursuant to CPL 250.10. The People moved to preclude such evidence, contending solely that such requisite notice was untimely. Defense counsel maintained that the late notice was the result of law office failure and that the prosecution could not claim any prejudice occasioned by the delay in view of the two hearings held pursuant to CPL article 730 and by the very compelling facts and nature of the case. On September 4, 2001, defense counsel filed with the court a written notice of intent to offer psychiatric evidence pursuant to CPL 250.10 and attached a forensic psychiatric evaluation conducted by Dr. Stephen Bates Billick and Dr. Mara Goldstein, who concluded that defendant suffered from a schizoaffective disorder, bipolar type, as well as polysubstance abuse. The doctors concluded that defendant had "longstanding cognitive problems consistent with untreated mental illness" and that he was experiencing "depressive symptoms three weeks prior to his arrest" which exacerbated his longstanding drug use as well as his psychotic and manic symptoms. Accordingly, the evaluation opined that defendant was "illogical, inconsistent and psychotic" at the time of the offense, and thus, was unable to form an intent to rape the complainant.

In granting the People's motion to preclude the psychiatric evidence, the trial court found, inter alia, defendant's CPL 250.10 notice both untimely and lacking an adequate showing that the psychiatric testimony would be admissible as necessary and relevant to a particular defense. We reverse.

CPL 250.10 (2) provides that a defendant has 30 days from his/her plea of not guilty in which to serve upon the prosecution and file with the court written notice of his/her intent to present psychiatric evidence. A trial court may, at any time prior to the close of evidence, permit late service and filing "[i]n the interest of justice and for good cause shown" (CPL 250.10 [2]).

It is well settled that "[t]he decision whether to allow a defendant, '[i]n the interest of justice and for good cause shown,' to serve and file late notice of intent to introduce psychiatric evidence is a discretionary determination to be made by the trial

court" on a case-by-case basis (*People v Berk*, 88 NY2d 257, 265-266 [1996], *cert denied* 519 US 859 [1996]; *see People v Almonor*, 93 NY2d 571 [1999]; *People v Di Donato*, 87 NY2d 992 [1996]). The trial court's discretion, however, is not absolute and an abuse of such discretion directly "implicates a defendant's constitutional right to present witnesses in his own defense" (*People v Berk, supra* at 266). Accordingly, a trial court is obligated to balance this constitutional right of the defendant with any resulting prejudice to the prosecution from the untimely notice (*id.*).

In balancing the legitimate concerns of both the People and defendant, we find that the trial court improvidently exercised its discretion in excluding the psychiatric testimony (*see People v Vale*, 133 AD2d 297, 299 [1987]). A careful review of the record reveals that the People had failed to advance any claim of prejudice from the delay, contending solely that the CPL 250.10 notice was beyond the requisite 30-day time period. In an effort to remedy what it perceived to be a chronic problem on the part of defendants in failing to comply with CPL 250.10, we find that the trial court, in its self-designated role of a "legal gatekeeper," effectively became an advocate for the People at the expense of defendant's constitutional rights. On this record, we find no legitimate claim on the part of the People of any resulting prejudice from the delay since it was clearly evident, given the totality of the facts and circumstances herein, that defendant's sanity and his ability to form the requisite intent to commit rape would be a significant factor at trial.

The trial court also erred in determining that there was not an adequate showing that the psychiatric evidence would be admissible as necessary and relevant to a particular defense. Contrary to the trial court's determination that the attached psychiatric examination was "inconsistent," "unspecific" and lacked a "sufficient diagnosis," we find that the conclusions reached by the expert psychiatric evaluation had sufficient scientific and objective underpinnings based on established methodology and demonstrated a clear connection between defendant's psychosis and his inability to form the intent to rape. The subject psychiatric evaluation was based upon detailed interviews with defendant and his roommate, two CPL article 730 competency examination reports and defendant's prison health service records and criminal court records.

We have considered the People's remaining arguments and find them unavailing. Concur—Tom, J.P., Saxe, Ellerin, Lerner and Gonzalez, JJ.