(August 26, 2004)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LEWIS HILL, Appellant. [781 NYS2d 106]—

Judgment, Supreme Court, Bronx County (Alexander W. Hunter, Jr., J.), rendered April 18, 2001, convicting defendant, after a jury trial, of murder in the second degree, and sentencing him to a term of 25 years to life, affirmed.

The court properly exercised its discretion in declining to

permit the defense to conduct a psychiatric examination of defendant more than three years after the crime. Although defendant had served and filed a timely notice of intent to proffer psychiatric evidence (CPL 250.10), this notice lacked the required specificity, and for three years defendant did not seek a psychiatric examination or provide any particulars of his defense, despite repeated requests by the prosecutor.

New counsel was assigned in October 2000. On January 29, 2001, in response to questioning by the trial court, new counsel asserted that, because the People's expert had found defendant to be a malingerer, she would not be pursuing an insanity defense (CPL 250.10 [1] [a]), although CPL 250.10 (1) (b) and (c), extreme emotional disturbance or other psychiatric defense, applied. Counsel sought, and was granted, authorization to retain a psychiatrist to examine the materials in the case. However, she affirmatively stated that it would be useless to have a psychiatrist examine defendant three years after the incident, and she intended to develop her theories through cross-examination of the prosecution expert.

On February 8, 2001, the day jury selection began, defense counsel altered course and represented that she now wished to proceed under the defenses of insanity and extreme emotional disturbance (CPL 250.10 [1] [a], [b]). She also stated that she was now considering having a psychiatrist examine defendant. During a break in jury selection, counsel was more resolute in her desire for an examination.

The following day, defense counsel tacked yet again, and asserted that she wished to offer evidence under all three paragraphs of CPL 250.10 (1), although during a colloquy she revised her argument to include only paragraphs (a) and (c).

In light of the foregoing, the trial court properly exercised its discretion in denying defense counsel's request for a psychiatric examination, which was not only made on the eve of trial, but also contravened counsel's prior representations (*see People v Berk*, 88 NY2d 257, 265-266 [1996], *cert denied* 519 US 859 [1996]; *People v Almonor*, 93 NY2d 571, 582-583 [1999]; *People v Brown*, 4 AD3d 886 [2004]).

In *People v Gracius* (6 AD3d 222 [2004]), relied on by the dissent, the defendant's delay in seeking a psychiatric examination was less than a month, in contrast to the three-year lapse in the instant case, and was occasioned by law office failure, rather than vacillating trial tactics. Moreover, in *Gracius*, the defendant was originally found unfit to stand trial and was confined to a psychiatric facility for five months for treatment and drug therapy, and thus there was no question that the "defendant's

sanity and his ability to form the requisite intent to commit [the crime] would be a significant factor at trial" (*id.* at 225). In the case at hand, neither the circumstances nor defense counsel's own theory presented such a clear situation. Indeed, at one point defense counsel affirmatively stated that she would not present an insanity defense, but would rather seek to show diminished capacity, through cross-examination of the People's expert. Furthermore, an examination of defendant three years after the incident at issue would be of questionable value in establishing his state of mind at the time of the incident.

Newly assigned defense counsel did not, as the dissent asserts, act diligently in pursuing an insanity defense, but rather was the one who presented ever-shifting positions on the matter. Allowing counsel to continue to flirt with yet new insanity-related theories at the late stage of jury selection would be prejudicial to the People's ability to present a case. While the dissent downplays that prejudice to the prosecution it also overlooks the fact that there is no countervailing constitutional right to indecision or gamesmanship (*see People v Berk, supra* at 266).

Defendant's claim that he was denied the constitutional right to present a defense is unpreserved (*see People v Angelo,* 88 NY2d 217, 222 [1996]), and we decline to review it in the interest of justice. Were we to review this claim, we would reject it (*see Crane v Kentucky,* 476 US 683, 689-690 [1986]). Concur— Buckley, P.J., Nardelli and Sullivan, JJ.

Andrias and Gonzalez, JJ., dissent in a memorandum by Andrias, J., as follows: Because the trial court improvidently precluded defendant's psychiatric expert, whose retention had been authorized by the court, from examining him on the eve of trial for the purpose of assisting defendant's insanity defense, I would reverse and order a new trial.

Sometime following his arraignment on February 27, 1998, defendant, who had told the police that he began hearing voices after he was hit by a car in 1997 and that he killed his girlfriend at a demon's behest, first orally and then, on January 20, 1999, in writing, gave the requisite notice pursuant to CPL 250.10 of his intention to present an insanity defense. Almost three years later in October 2000, his assigned counsel was replaced by new counsel. Thereafter, on January 31, 2001, the trial court authorized defense counsel to retain a psychiatrist for a "psychiatric examination and consultation." Nevertheless, on February 8, 2001, one week after the prosecution moved pursuant to *People v Almonor* (93 NY2d 571 [1999]) for an order directing the defense to specify the type of psychiatric defense it intended to pursue, with the trial court reserving decision pending comple-

tion of the pretrial *Huntley* hearing, the court precluded the defense psychiatric expert from examining defendant. In so ruling, the court accepted the prosecutor's argument that defense counsel had not offered "just cause" for an extension of time to conduct a psychiatric examination.

Thereafter, on February 15, 2001, the third day of voir dire and two weeks after the initial discussion of the parameters of the insanity defense, the People argued that defense counsel should not be permitted to present an insanity defense since such defense of nonresponsibility by reason of mental disease or defect must be presented through an expert witness who had interviewed defendant and could offer an opinion as to his mental status at the time of the crime. The prosecution urged that review of documents without a "personal interview" would not allow for a competent opinion as to defendant's mental health. Defense counsel pointed out to the court that she had been asking for weeks to have defendant examined by a psychiatrist (an examination which she had offered, on February 8, to have conducted over the next few days and have its results provided to the People), and that the prosecution had repeatedly objected on grounds of unfair surprise.

The court ruled that defendant did not have to be examined by a psychiatrist in order to present an insanity defense. Instead, the court ruled that the psychiatrist could testify as to defendant's mental status based upon his examination of the report of the prosecution's expert and defendant's medical and family history, but would have to render an opinion, not speculation, based on his review of the existing reports and documents. The court also sought to clarify that, although the voucher it had signed indicated it was for "psychiatric examination and consultation," based on the arguments it heard, it meant that the court-appointed psychiatrist would be looking at records or maybe interviewing the family, short of conducting an actual physical or psychiatric examination of defendant. The court, which had previously denied the prosecution's request for an adjournment in the event the defense was permitted a psychiatric examination, then adjourned jury selection for one week. Subsequent requests that the court reconsider its preclusion of a psychiatric examination were denied on February 20 and March 8, the fourth day of trial. Thereafter, the People successfully moved to preclude the defense from eliciting that its psychiatric expert had not been allowed to examine defendant.

This Court recently reversed an attempted rape conviction and ordered a new trial before a different justice where the defense was precluded from presenting psychiatric evidence

(*People v Gracius*, 6 AD3d 222 [2004]). The trial court had found, inter alia, that the defendant's CPL 250.10 notice was both untimely and lacking an adequate showing that the psychiatric testimony would be admissible as necessary and relevant to a particular defense. This Court, however, balancing the legitimate concerns of both the People and the defendant, found that the trial court improvidently exercised its discretion in excluding the psychiatric testimony since there was no legitimate claim on the part of the People of any resulting prejudice from the delay since it was clearly evident, given the totality of the facts and circumstances, that the defendant's sanity and his ability to form the requisite intent to commit rape would be a significant factor at trial (*People v Gracius*, 6 AD3d 222 [2004]).

The same can be said here. Although the court had allowed the defense to present an insanity defense, its preclusion of defendant's court-appointed psychiatric expert from examining defendant eviscerated such defense without any showing by the prosecution of any prejudice from a delay. Defendant would have been better off if he was precluded from presenting an insanity defense in the first place. In effect, defendant was placed in the worst possible position by first being permitted to raise an insanity defense and then being forced to fight to defend himself on grounds of insanity with one hand tied behind his back. While defendant's expert was able to offer generalized testimony about a person with defendant's reported symptoms, he was unable to offer an opinion on defendant's sanity since he had never examined him. On the other hand, the People's expert, who had examined defendant on three separate occasions a year earlier, was able to testify in rebuttal that, based upon that examination, it was his professional opinion that defendant was not suffering from any mental disease or defect.

As this Court stated in *People v Gracius* (*supra* at 224-225): "It is well settled that '[t]he decision whether to allow a defendant, "[i]n the interest of justice and for good cause shown," to serve and file late notice of intent to introduce psychiatric evidence is a discretionary determination to be made by the trial court' on a case-by-case basis (*People v Berk*, 88 NY2d 257, 265-266 [1996], *cert denied* 519 US 859 [1996]; *see People v Almonor*, 93 NY2d 571 [1999]; *People v Di Donato*, 87 NY2d 992 [1996]). The trial court's discretion, however, is not absolute and an abuse of such discretion directly 'implicates a defendant's constitutional right to present witnesses in his own defense' (*People v Berk, supra* at 266). Accordingly, a trial court is obliged to balance this constitutional right of the defendant with any resulting prejudice to the prosecution from the untimely notice (*id.*)."

Unlike *Gracius*, where defendant attempted to file a late notice, this is a much stronger case for reversal since there is no question that defendant's notice was timely. There was none of the requisite balancing in this case, and the People's claims of prejudice, lack of preservation and harmless error are unconvincing. Absent from the majority's decision is any reference to the patent lack of prejudice to the People. Also absent is any consideration of the fact that defendant's newly assigned counsel, who was substituted four months prior to trial, moved promptly to retain a psychiatrist, which the court authorized for a "psychiatric examination and consultation." Thus, whatever deficiencies, if any, there were in defendant's prior representation, there is no question of diligence on the part of substituted counsel in pursuing an insanity defense. As this Court warned in *Gracius*, the court should not, in the guise of acting as a "legal gatekeeper," become an advocate for the People at the expense of defendant's constitutional rights (*supra* at 225).

Contrary to the majority's finding that defendant's constitutional claim is unpreserved, defense counsel repeatedly renewed her request to have defendant examined by the court-authorized psychiatrist and objected to each of the court's rulings precluding such examination. She also informed the court that its ruling "weakened" the defense; that the court had cut the defense off at the knees; and, that there was no "meat" left to the defense. Clearly the importance to defendant of the psychiatric testimony on the only issue in dispute at the trial impacted on his Sixth Amendment right to present witnesses and clearly outweighed any possible prejudice to the People, who, as noted previously, failed to make any such showing.

Under the facts of this case, the trial court improvidently exercised its discretion and a new trial is warranted.