People v Freeman (2018 NY Slip Op 01702)





People v Freeman


2018 NY Slip Op 01702


Decided on March 16, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on March 16, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., PERADOTTO, LINDLEY, NEMOYER, AND TROUTMAN, JJ.


3 KA 15-00251

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
MARCUS C. FREEMAN, DEFENDANT-APPELLANT. (APPEAL NO. 1.) 






TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (TIMOTHY DAVIS OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (SCOTT MYLES OF COUNSEL), FOR RESPONDENT. 


 Appeal from a judgment of the Monroe County Court (Victoria M. Argento, J.), rendered December 4, 2014. The judgment convicted defendant, upon a jury verdict, of murder in the second degree, attempted murder in the second degree, assault in the first degree, criminal use of a firearm in the first degree (two counts) and criminal sexual act in the first degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously modified on the law by reversing those parts convicting defendant of attempted murder in the second degree, assault in the first degree and criminal use of a firearm in the first degree under counts two, three and six of the indictment, and vacating the sentences imposed thereon, and as modified the judgment is affirmed and a new trial is granted on those counts.
Memorandum: Defendant appeals from a judgment convicting him following a jury trial of murder in the second degree (Penal Law
§ 125.25 [1] [count one]), attempted murder in the second degree
(§§ 110.00, 125.25 [1] [count two]), assault in the first degree
(§ 120.10 [1] [count three]), criminal use of a firearm in the first degree (§ 265.09 [1] [a] [count six]), criminal sexual act in the first degree (§ 130.50 [1] [count seven]), and a second count of criminal use of a firearm in the first degree (§ 265.09 [1] [b] [count eight]). Counts one, two, three and six relate to the shooting of two people, one of whom died, while counts seven and eight are related to defendant's sexual assault of his then girlfriend at gunpoint the night before the shooting.
We agree with defendant that County Court erred in refusing to charge the jury on the defense of justification insofar as it related to counts two, three and six. The evidence at trial established that defendant was arrested in the spring of 2013 for sexually abusing a 12-year-old girl. Shortly thereafter, defendant was shot in broad daylight outside of his home, and the girl's father and uncle were arrested for that shooting. Several months later, defendant came home from work for an early lunch and observed a small group of people outside assisting defendant's girlfriend by packing a moving truck with her belongings. Included in that group was the brother of defendant's girlfriend, Martin Moore, and Walesy Alvarez, the mother of the sexual abuse victim and Moore's girlfriend at the
time.
Defendant testified at trial that, as he stopped his vehicle on the street in front of his apartment, Moore approached him in an aggressive manner while holding something in his hand. Fearing that he was about to be shot again, defendant pulled out a gun that he carried with him for protection and opened fire on Moore. One of the bullets struck Moore, who ran into the house. Another bullet struck Alvarez in the head and killed her as she was sitting in the driver's seat of Moore's vehicle. Defendant fired additional shots at Moore as he chased him into the [*2]house. Moore ran into the attic, and defendant left the house after running out of ammunition. The police found and arrested defendant the next day.
According to defendant, he intentionally shot at Moore in self-defense, but he did not see Alvarez in the vehicle and did not intend to shoot her. In fact, defendant testified at trial that he did not even realize that Alvarez had been shot. However, Moore testified that, after defendant shot him, Alvarez yelled something, whereupon defendant fired another shot, the one that evidently struck Alvarez.
In considering whether the trial court's charge to the jury was adequate, we must consider the record in the light most favorable to defendant (see People v Padgett, 60 NY2d 142, 144 [1983]). "[I]f on any reasonable view of the evidence, the fact finder might have decided that defendant's actions were justified, the failure to charge the defense constitutes reversible error" (id. at 145; see Penal Law
§ 35.15 [2] [a], [c]; People v Maher, 79 NY2d 978, 982 [1992]).
Here, viewing the evidence in the light most favorable to defendant, we conclude that "it would not have been irrational for the jury to credit . . . defendant's account of the incident" (People v Irving, 130 AD3d 844, 845 [2d Dept 2015]; cf. People v Gentile, 23 AD3d 1075, 1075 [4th Dept 2005], lv denied 6 NY3d 813 [2006]). Although defendant's claim that he shot Moore in self-defense is dubious, a trial court is required to give the justification charge even where the defendant's version of events is "extraordinarily unlikely" (People v Smith, 62 AD3d 411, 411 [1st Dept 2009], lv denied 12 NY3d 929 [2009]). We note that the jury evidently struggled with its verdict inasmuch as it deliberated for more than two days before reaching a verdict, and it requested readbacks of large portions of testimony.
We reject the People's contention that defendant was not entitled to the justification charge because he had a duty to retreat. Under the circumstances of this case, the questions whether defendant could have retreated or was under a duty to retreat are questions of fact to be determined by the jury (see e.g. People v Berk, 88 NY2d 257, 267 [1996], cert denied 519 US 819 [1996]; People v Daniel, 35 AD3d 877, 878 [2d Dept 2006], lv denied 8 NY3d 945 [2007]; cf. People v Alston, 104 AD2d 653, 654 [2d Dept 1984]). We thus conclude that the court should have granted defendant's request to charge the jury on the defense of justification with respect to counts two, three and six.
We reject defendant's contention, however, that the court should have charged the jury on the defense of justification with respect to count one, charging murder in the second degree. The justification defense does not apply to the intentional murder of Alvarez, who was shot while sitting in Moore's vehicle and posed no conceivable threat to defendant. The court did not instruct the jury on transferred intent, and the People's theory, as set forth in the indictment and argued at trial, was that defendant intentionally shot and killed Alvarez. As noted, defendant testified that he shot at Moore in self-defense and that he did not even know that Alvarez had been shot. If the jury had believed defendant's testimony, it would have acquitted him of intentional murder inasmuch as he testified that he did not intend to kill Alvarez. Because the jury convicted defendant of murder in the second degree, we must presume that it followed the court's instructions and concluded that defendant intended to kill Alvarez. Of course, if defendant intended to kill Alvarez, then he was not justified in doing so inasmuch as she posed no threat to him.
Defendant further contends that the verdict with respect to counts seven and eight is against the weight of the evidence. We reject that contention. The testimony of defendant's girlfriend concerning the sexual assault perpetrated against her by defendant was not incredible as a matter of law, and defendant's denial of the assault presented the jury with a credibility determination. The jury credited the victim's testimony, which was corroborated by the fact that the morning after the assault she secreted her children away and attempted to move out of the residence she had shared with defendant. It was during that attempt to move that defendant shot two of the people at the residence. Viewing the evidence in light of the elements of the crimes in counts seven and eight as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence with respect to those counts (see generally People v Bleakley, 69 NY2d 490, 495 [1987]).
Entered: March 16, 2018
Mark W. Bennett
Clerk of the Court