[876 NYS2d 69]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TEOFILO DIAZ, Appellant.

Second Department, March 17, 2009

---

**APPEARANCES OF COUNSEL**

*Lynn W. L. Fahey*, New York City (*Erica Horwitz* of counsel), for appellant.

*Charles J. Hynes, District Attorney*, Brooklyn (*Leonard Joblove* and *Shulamit Rosenblum Nemec* of counsel), for respondent.

**OPINION OF THE COURT**

SKELOS, J.P.

The principal issues presented on this appeal are whether, pursuant to CPL 250.10, a defendant who intends to interpose an affirmative defense of extreme emotional disturbance is required to serve and file a notice of intent to proffer psychiatric evidence and to submit to an examination by a psychiatrist designated by the People, where the defendant only intends to present lay testimony in support of that defense.

On June 4, 2000, the defendant strangled to death Felipa Santana, his former girlfriend. At trial, the defendant testified that on the night of the murder, he visited Santana at her Brooklyn apartment where he beat and strangled her after an argument. According to the defendant, Santana told him that the younger of their two children had been fathered by another man, which caused him to go "crazy."

The older of the two subject children, their daughter, testified that she and her brother were in the room when their mother was killed. After the murder, the defendant took the children

and brought them to the home of a relative. The defendant then fled to Florida where he was apprehended more than a year later, as a result of a traffic violation.

On February 18, 2004, immediately prior to jury selection, the People made a *Molineux* application (*see People v Molineux*, 168 NY 264 [1901]). The People argued that the defendant had been incarcerated for a lengthy period of time because of a prior assault on Santana and that two weeks before the murder, the defendant had been released from jail. The People argued that the underlying facts of the prior assault and the defendant's lengthy incarceration provided the defendant with a motive for the killing and showed his intent to murder the victim.

Prior to deciding the application, the court informed defense counsel that in order to comply with the balancing test of *Molineux*, the defendant would have to advise the court of his defense. At that time, defense counsel stated that the defendant was not denying that he murdered or intended to murder Santana. However, defense counsel averred that the defendant murdered Santana under circumstances evincing extreme emotional disturbance (hereinafter EED). The People objected to any evidence of EED because the defendant had failed to serve and file a notice of intent pursuant to CPL 250.10 (2) (*see People v Berk*, 88 NY2d 257 [1996], *cert denied* 519 US 859 [1996]). Defense counsel argued that he was not required to give such notice because he only intended to proffer lay testimony on that defense, to wit, the defendant's own testimony, and, therefore, notice was not required. The People disagreed.

The Supreme Court granted the defendant leave to serve a late notice of intent upon finding that the defendant's failure to serve and file the notice was not willful (*see* CPL 250.10 [2]). Thereafter, the People requested that the defendant be examined by their own expert as to the viability of the affirmative defense of EED. The defendant objected, contending that the People were not entitled to have him examined by the People's expert because the defendant intended to establish the EED defense through lay testimony only.

On February 20, 2004, after hearing argument, the Supreme Court, in an oral ruling, stated that notice had been filed, directed the examination of the defendant by the People's psychiatric expert to proceed so as to expedite the trial, and adjourned the matter pending its decision as to the "legitimacy of such grant" (*People v Diaz*, 3 Misc 3d 686, 691 n 4 [Sup Ct, Kings County 2004, Leventhal, J.]).

Subsequently, in its written decision, the Supreme Court determined the admissibility and permissible scope of the People's expert testimony (*see People v Diaz*, 3 Misc 3d 686 [2004]). The Supreme Court found, inter alia, that the court-ordered examination did not violate the defendant's Fifth Amendment right against self-incrimination because the testimony of the People's expert would only be admissible if the defendant waived that right by testifying to a mental state or to facts from which the jury could infer his EED defense (*id.* at 696). The Supreme Court also opined that even in the absence of a court-ordered examination, the People could have had a mental expert present in the courtroom to observe the defendant and subsequently testify as to those observations (*id.*, citing *People v Sullivan*, 39 NY2d 903, 904-905 [1976]).

The Supreme Court also ruled that it would determine whether the defendant was entitled to a jury charge on the EED defense after the defendant put on his case. In addition, the Supreme Court ruled that it would limit the People's introduction of their psychiatrist's expert testimony to rebuttal.

At trial, in addition to the defendant testifying on his own behalf as to the circumstances surrounding the murder and his state of mind, the defense also introduced the testimony of a psychiatrist. The defense expert testified that he had examined the defendant after the court's evidentiary ruling, inter alia, directing the defendant to undergo a psychiatric examination by the People's expert. On rebuttal, the People introduced the testimony of their own psychiatrist.

Penal Law § 125.25 (1) (a) provides for a reduction of the crime of murder in the second degree to manslaughter in the first degree if the defendant proves by a preponderance of the evidence that the homicidal act was committed under "extreme emotional disturbance" (*see People v White*, 79 NY2d 900, 902-903 [1992]). "The affirmative defense has two components: an objective element requiring sufficient proof that there was a reasonable explanation or excuse for the emotional disturbance, and a subjective element requiring sufficient proof that the conduct was influenced by an extreme emotional disturbance at the time the alleged crime was committed" (*People v White*, 79 NY2d at 903; *see People v Moye*, 66 NY2d 887, 889-890 [1985]). In order to establish the affirmative defense, the defendant must prove a "mental infirmity" not rising to the level of insanity (*People v Patterson*, 39 NY2d 288, 302 [1976], *affd* 432 US 197 [1977]; *see People v Smith*, 1 NY3d 610, 612 [2004]), in the

absence of which the defendant would not be entitled to a jury instruction on the EED defense (*see People v Roche*, 98 NY2d 70, 76 [2002]). Of particular significance here is an amendment to the Criminal Procedure Law, enacted in 1982, that expanded the scope of the previous notice requirement under former CPL 250.10, requiring advance notice of a defendant's intent to rely upon the insanity defense to encompass evidence offered to support the affirmative defense of EED (*see* CPL 250.10, as amended by L 1982, ch 558, § 9).

■ The Supreme Court did not err in requiring the defendant to provide statutory notice pursuant to CPL 250.10 notwithstanding his stated intention to support the EED defense with lay testimony only (*see People v Rivers*, 281 AD2d 348 [2001]; *see also People v Rivenburgh*, 1 AD3d 696 [2003]; *People v Felix*, 232 AD2d 228 [1996]). Under CPL 250.10 (2), "[p]sychiatric evidence is not admissible upon a trial unless the defendant serves upon the people and files with the court a written notice of his intention to present psychiatric evidence. Such notice must be served and filed before trial and not more than thirty days after entry of the plea of not guilty to the indictment" (CPL 250.10 [2]). The trial court, however, may allow late notice to be filed at any later time prior to the close of the evidence, where it is in the "interest of justice and for good cause shown" (*id.*).

In *People v Berk* (88 NY2d 257 [1996]), the Court of Appeals rejected an argument by the defendant therein that the CPL 250.10 notice requirement applied only to psychiatric evidence obtained by means of a psychiatric examination of the defendant (*see e.g. People v Kruglik*, 256 AD2d 592 [1998]). In *Berk*, the defendant argued that he was not required to serve the People with notice of his prospective expert testimony because the expert never examined him, thus obviating the need for statutory notice (*see People v Berk*, 88 NY2d at 262). The defendant's expert in *Berk* was to testify, generally, as to the "fight or flight" syndrome and the impairment of memory following a traumatic event (*id.* at 261). The *Berk* defendant further argued that the People, in the purported absence of the notice requirement, also were not entitled to conduct an independent examination of him (*id.* at 262).

The Court of Appeals concluded that the defendant's "restrictive reading of the statute . . . [was] not supported by the plain language or the purpose of CPL 250.10" (*id.*). As noted by the Court of Appeals, the "plain language of the statute requires that any evidence regarding a mental disease or defect offered

in relation to the defense of extreme emotional disturbance . . . be preceded by timely notice to the People" (*id*. at 263; *see People v Almonor*, 93 NY2d 571, 581 [1999]). While it is true that *Berk* is distinguishable in that the issue addressed therein involved the testimony of a psychiatrist, albeit, one that had not examined the defendant and not, as here, a layperson, the rationale of the Court of Appeals, to wit, to " 'prevent disadvantage to the prosecution as a result of surprise,' " is no less applicable (*People v Berk*, 88 NY2d at 263, quoting *Ronson v Commissioner of Correction of State of N.Y.*, 463 F Supp 97, 103 [1978], *affd* 604 F2d 176 [1979]).

The legislative history of the original notice provision (*see* former Code Crim Pro § 336) further supports the broader interpretation of the successor statute (*see* CPL 250.10) articulated by the Court of Appeals in *Berk*, and now adopted by this Court, in the context of a defendant who only intended to proffer lay testimony in support of the EED defense. As noted by the Court of Appeals in *Berk*, the legislative memorandum accompanying the original notice provision reasoned that the absence of any provision then in the Code requiring notice that the defendant intended to present evidence of mental disease or defect, " 'place[d] the People at an unfair disadvantage in that, surprised by the sudden interposition of this collateral defense, they may have insufficient opportunity to obtain the psychiatric and other evidence necessary to refute it' " (*People v Berk*, 88 NY2d at 264, quoting Mem of Commn on Rev of Penal Law and Crim Code in support of L 1963, ch 595, 1963 McKinney's Session Laws of NY, at 1986).

If the People are not provided notice of a defendant's intention to assert the EED defense, such " 'unfair disadvantage' " (*id*.) may occur whether the defendant intends to proffer lay testimony or expert testimony in support of the defense. While the Court of Appeals has not yet had occasion to address this precise issue (*see People v Smith*, 1 NY3d at 612), as the Court opined in *Berk*, the foregoing

> "statement of legislative intent manifestly establishe[d] that the primary aim of the pretrial notice requirement was to ensure the prosecution sufficient opportunity to obtain the psychiatric and other evidence necessary to refute the proffered defense of mental infirmity [so as] to allow the prosecution an opportunity to acquire relevant information from any source—not merely from an indepen-

dent examination of the defendant—to counter the defense" (*People v Berk*, 88 NY2d at 264 [internal quotation marks and citations omitted]).

In other words, as the Court of Appeals concluded in *Berk*, "inasmuch as the notice requirement was designed to allow the People an opportunity to obtain any mental health evidence necessary to refute a defense of mental infirmity, it follows that it applies to any mental health evidence to be offered by the defendant in connection with such a defense" (*id.* at 265).

What *Smith* and other earlier decisions of the Court of Appeals make clear is that lay testimony alone can be sufficient to establish the EED defense (*see People v Smith*, 1 NY3d at 612; *see e.g. People v Moye*, 66 NY2d at 890; *see also Matter of Lee v County Ct. of Erie County*, 27 NY2d 432, 442 [1971], *cert denied* 404 US 823 [1971]), provided that the defendant shows that "he or she suffered from a mental infirmity not rising to the level of insanity at the time of the homicide, typically manifested by a loss of self-control" (*People v Roche*, 98 NY2d at 75). Thus, it follows that if the defendant can raise the defense of EED through the submission of lay testimony, the People must be given an opportunity to counter that defense with relevant information from any source. To hold otherwise would allow a defendant to interpose the defense of EED on the eve of trial, as did the defendant here, without affording the People the opportunity to obtain evidence to counter the defense, thereby placing them at an unfair disadvantage (*see People v Berk*, 88 NY2d at 263; *People v Felix*, 232 AD2d 228 [1996]).

Accordingly, we conclude that where, as here, the mental health evidence intended to be offered by a defendant is in the nature of lay testimony, the defendant is required to provide statutory notice pursuant to CPL 250.10.

■ The Supreme Court also did not err in directing the defendant to submit to a psychiatric examination by the People's expert (*see* CPL 250.10 [3]). Pursuant to CPL 250.10 (3), "[w]hen a defendant, pursuant to subdivision two of this section, serves notice of intent to present psychiatric evidence, the district attorney may apply to the court, upon notice to the defendant, for an order directing that the defendant submit to an examination by a psychiatrist or licensed psychologist."

The defendant argues that a court may require a defendant to submit to an examination by the People's psychiatrist only if the defendant intends to offer *expert* psychiatric testimony as to mental disease or defect in connection with the affirmative

defense of EED (*see People v Morgan*, 178 Misc 2d 554 [1998]; *but see People v Irwin*, 182 Misc 2d 113 [1999]). Thus, the defendant argues that since he served notice of his intent to proffer lay testimony only as to the EED defense, CPL 250.10 (3) was inapplicable. CPL 250.10 (1) (b) defines the term "psychiatric evidence" as: "[e]vidence of mental disease or defect to be offered by the defendant in connection with the affirmative defense of extreme emotional disturbance as defined in" Penal Law § 125.25 (1) (a) and § 125.27 (2) (a). Significantly, the phrase "[e]vidence of mental disease or defect" is not modified, and thus does not limit psychiatric evidence to evidence obtained pursuant to an examination by a psychiatrist or licensed psychologist. Accordingly, where, as here, a defendant serves a notice of his or her intention to present psychiatric evidence in connection with the affirmative defense of EED, notwithstanding his or her intention to proffer lay testimony only, the court may require the defendant to submit to an examination by the People's psychiatrist (*see generally People v Rivers*, 281 AD2d 348 [2001]; *cf. People v Berk*, 88 NY2d at 262).

Notably, in *People v Smith* (1 NY3d at 612), the Court of Appeals opined that upon a defendant's service of a notice under CPL 250.10, "the People have the right to an examination of the defendant by a psychiatrist or a psychologist" (*id.*), as to any defense asserted in that notice (*see* CPL 250.10 [3]; *People v Kruglik*, 256 AD2d at 593; *People v Budwick*, 20 Misc 3d 1139[A], 2008 NY Slip Op 51793[U] [2008]; *cf. People v Segal*, 54 NY2d 58 [1981] [interpreting former CPL 250.10 governing the insanity defense to apply to a defense predicated on a defendant's alleged impaired memory and striking the testimony of the defendant's expert when the defendant refused to undergo a psychiatric examination by the People's expert]). The defendant correctly argues that the foregoing quoted text is dictum insofar as the Court of Appeals, in *Smith*, did not reach the issue of whether pretrial notice was required since there was an insufficient offer of proof by the defendant in that case of the EED defense (which proof, as originally had been intended here, only included the defendant's own testimony). However, the statutory language itself provides the basis for this Court's conclusion that the term "psychiatric evidence," as defined in CPL 250.10 (1) (b), defines the term unqualifiedly, in effect, as any evidence of mental disease or defect (*see People v Irwin*, 182 Misc 2d at 119; *People v Chavis*, 181 Misc 2d 540, 543 [1999]).

The legislative intent can be gleaned from reading a "statute as a whole, reading and construing all parts . . . together . . .

and, where possible, [the court] should harmonize[ ] [all parts of a statute] with each other . . . and [give] effect and meaning . . . to the entire statute and every part and word thereof" (*Friedman v Connecticut Gen. Life Ins. Co.*, 9 NY3d 105, 115 [2007] [internal quotation marks and citations omitted]; *see* McKinney's Cons Laws of NY, Book 1, Statutes § 97; *People v Finley*, 10 NY3d 647, 655 [2008]). Here, pursuant to the notice requirement specified under CPL 250.10 (2), "psychiatric evidence" is not admissible unless the defendant serves a written notice of intent to offer such testimony (*see e.g. People v Almonor*, 251 AD2d 339, 340-341 [1998], *affd* 93 NY2d 571, 581 [1999] [court properly refused to admit, in the absence of CPL 250.10 notice, the testimony of a psychologist who was to interpret the results of certain intelligence and personality tests of the defendant]). As the Court of Appeals opined in *Almonor*, "the statute contemplates and mandates preclusion for failure of compliance. The statute is not cast so as to allow a defense or affirmative defense to be introduced when notice is given; it is cast in terms that *bar the defense* unless notice is given" (*People v Almonor*, 93 NY2d at 581 [emphasis added]). Thus, the statutory language of preclusion for failure to comply with the notice provision contemplates a bar of the defense, in toto, in the absence of the requisite notice of intent by the defense, not only the preclusion of expert testimony to support it (*see generally People v Wagner*, 27 AD3d 671, 672-673 [2006]; *People v Lewis*, 302 AD2d 322 [2003]; *People v Rivers*, 281 AD2d 348 [2001]).

In comparison, when the requisite notice is given, pursuant to CPL 250.10 (5), the defendant is precluded from introducing testimony by a psychiatrist or psychologist if that defendant has willfully refused to cooperate in the court-ordered examination pursuant to CPL 250.10 (3). That same defendant, however, is not precluded from proffering "other proof of his affirmative defense," if otherwise competent (CPL 250.10 [5]; *see People v Sullivan*, 39 NY2d 903, 904-905 [1976]; *Matter of Lee v County Ct. of Erie County*, 27 NY2d at 442). As noted by the Court of Appeals in *Almonor*, "[t]he *Lee* holding was engrafted into the statutory format so that by 1980, CPL 250.10 contained the notice and preclusion concept of former Code of Criminal Procedure § 336 as well as the prosecution's entitlement to its own expert mental examination (L 1980, ch 548)" (*People v Almonor*, 93 NY2d at 580).

The term "psychiatric evidence," as defined in CPL 250.10 (1) (b) and used in CPL 250.10 (3) with reference to the no-

tice of intent that triggers the People's right to a court-ordered examination, when interpreted in conjunction with its use in the CPL 250.10 (2) notice requirement, necessarily encompasses both "testimony by a psychiatrist or psychologist" and "other proof" such as the testimony of laypersons. To attribute a more restrictive meaning to the term "psychiatric evidence," and thereby limit its scope to expert testimony from a psychiatrist or psychologist, would render superfluous the language immediately following the first sentence of CPL 250.10 (5). In other words, it would not have been necessary for the Legislature to distinguish "testimony by a psychiatrist or psychologist" from "other proof" in describing the sanction for failing to cooperate with a court-ordered psychiatric examination if the term psychiatric evidence referred only to the former.

Moreover, CPL 250.10 (5) also provides that the court must instruct the jury regarding the defendant's failure to submit to or cooperate fully in the pretrial psychiatric examination ordered by the court pursuant to CPL 250.10 (3) and that such failure may be considered in determining the merits of the affirmative defense (*see e.g. People v Wenzel*, 133 AD2d 716 [1987]). Where, as here, a defendant does not intend to proffer the psychiatric testimony of an expert, the defendant having done so ostensibly in response to the court having ordered his examination by the People's psychiatrist, the preclusion of testimony by a psychiatrist or psychologist would hardly be a sanction. The court's mandatory instruction to the jury, however, of the defendant's failure to comply with CPL 250.10 (3), constitutes a sanction so as not to render CPL 250.10 (5) otherwise meaningless (*cf. People v Jackson*, 87 NY2d 782, 790 [1996]).

The defendant argues that requiring him to undergo an examination by the People's expert, where only nonexpert testimony is offered in support of the EED defense, violates his Fifth Amendment right against compelled self-incrimination. This contention is without merit (*see People v Morgan*, 178 Misc 2d 554 [1998]). In *Matter of Lee*, the Court of Appeals held that a defendant who raises the defense of insanity waives his Fifth Amendment privilege against self-incrimination with respect to his mental capacity (*see Matter of Lee v County Ct. of Erie County*, 27 NY2d at 440-441; *cf. People v Segal*, 54 NY2d at 64). Subsequently, in *Segal*, the Court of Appeals took note of the rule adopted by the courts

in the wake of *Matter of Lee* and later codified (L 1980, ch 548, § 7) that recognized the People's right to examine a defendant who put his or her mental capacity at issue even in the absence of statutory authorization "based on principles of fairness and the integrity of the trial process" (*People v Segal*, 54 NY2d at 64-65). While *Segal* is distinguishable in that the question of the defendant's mental capacity was raised regarding an issue on which the People had the burden of proof (i.e., the intent element of perjury), and recognizing that here the People do not bear the burden of disproving the affirmative defense of EED (*see* Penal Law § 25.00 [2]), the rationale in not allowing the defendant to hide behind the privilege is the same.

Specifically, where a defendant interposes an affirmative defense such as EED, while the People do not have the burden of proof, they still have the right to refute the defense (*see People v Berk*, 88 NY2d at 265; *People v Cruickshank*, 105 AD2d 325, 330 [1985], *affd sub nom. People v Dawn Maria C.*, 67 NY2d 625 [1986] [on different grounds]). Thus, the defendant's reliance on *Estelle v Smith* (451 US 454 [1981]) is misplaced. In that case, the United States Supreme Court ruled that the testimony of the People's psychiatrist, who examined the defendant to determine his competency to stand trial, and later testified as to his future dangerousness, violated his Fifth Amendment privilege against compulsory self-incrimination (*see Estelle v Smith*, 451 US 454 [1981]). *Estelle* is distinguishable from the case at bar in that the defendant therein did not put into issue his own competency to stand trial or his sanity at the time of the offense (*see Estelle v Smith*, 451 US at 457 n 1; *but see People v Kruglik*, 256 AD2d at 593), whereas here, the defendant's assertion of his intent to raise the defense of EED clearly put into issue his mental state at the time of the offense.

The "privilege [against self-incrimination] is fulfilled only when a criminal defendant is guaranteed the right 'to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence' " (*Estelle v Smith*, 451 US at 468, quoting *Malloy v Hogan*, 378 US 1, 8 [1964]). Accordingly, where, as here, the trial court's ruling ordering a psychiatric examination of the defendant by the People's expert limited its use to the People's case on rebuttal, there was no Fifth Amendment violation (*see e.g. Buchanan v Kentucky*, 483 US 402, 422-424 [1987]). Notably,

at bar, had the defendant chosen not to proffer the testimony of his own psychiatrist, the People also may have relied upon their expert testimony based upon the *observation* of the defendant in the courtroom or elsewhere (*see People v Sullivan*, 39 NY2d at 905). In any event, under the circumstances of this case, the defendant's Fifth Amendment privilege against compulsory self-incrimination was not implicated.

The defendant also contends that the expert psychiatrist designated by the People improperly testified as to matters of credibility. However, with respect to most of the expert's testimony, "the court properly balance[d] the jury's need to be informed of the basis for the expert's opinion against the prejudice to defendant resulting from expert testimony that defendant was not credible" (*People v Doczy*, 210 AD2d 425, 426 [1994] [internal quotation marks and citations omitted]; *see People v Jones*, 261 AD2d 920 [1999]; *People v Braun*, 199 AD2d 993 [1993]). Although some of the expert's comments regarding the truthfulness of the trial testimony of the defendant and a defense witness may have been improper, any error in that regard was harmless in light of the overwhelming evidence of the defendant's guilt and the lack of any significant probability that the jury would have acquitted the defendant had the error not occurred (*see generally People v Smith*, 2 NY3d 8, 12-13 [2004]; *People v Crimmins*, 36 NY2d 230, 242 [1975]).

Contrary to the defendant's contention, the prosecutor's remarks in summation generally constituted fair comment on the evidence or were responsive to the defendant's summation (*see generally People v Ashwal*, 39 NY2d 105, 109 [1976]; *People v Jones*, 294 AD2d 517 [2002]). Moreover, the trial judge, in response to certain objections, either issued an ameliorative curative instruction or sustained the defendant's objection without further request by the defendant for a curative instruction (*see People v Berg*, 59 NY2d 294, 299-300 [1983]; *People v Arce*, 42 NY2d 179, 187 [1977]). To the extent that any of the summation remarks were improper, any error was harmless (*see generally People v Crimmins*, 36 NY2d 230, 237 [1975]; *People v Waymea*, 49 AD3d 672 [2008]; *compare People v Wood*, 66 NY2d 374, 380-381 [1985]).

The defendant received the effective assistance of counsel under both the state constitutional standard (*see People v Williams*, 8 NY3d 854, 855-856 [2007]; *People v Taylor*, 1 NY3d 174, 176-178 [2003]; *People v Benevento*, 91 NY2d 708 [1998];

*People v Baldi*, 54 NY2d 137, 147 [1981]) and the federal constitutional standard (*see Strickland v Washington*, 466 US 668 [1984]).

Accordingly, the judgment is affirmed.

FISHER, DICKERSON and BELEN, JJ., concur.

Ordered that the judgment is affirmed.