[894 NYS2d 336]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v VICTOR GONZALEZ, Defendant.

Supreme Court, Bronx County, December 3, 2009

APPEARANCES OF COUNSEL

*Bronx Defenders Office* (*Matthew Kadushin* and *Karen Smolar* of counsel), for defendant. *Robert T. Johnson, District Attorney* (*Gary Weil* of counsel), for plaintiff.

**OPINION OF THE COURT**

CAESAR D. CIRIGLIANO, J.

On April 7, 2009 the defendant Victor Gonzalez was convicted after jury trial before this court of murder in the second degree (Penal Law § 125.25). Thereafter, on July 14, 2009, defendant moved for an order pursuant to Criminal Procedure Law § 330.30 (1), 330.40 and 330.50 to set aside his verdict of guilty. The defense's principal argument is that the court should not have granted the People's application to reopen their case after they had rested. Moreover, that permitting the People to call their expert to rebut the charge of extreme emotional disturbance would have been an abuse of the court's discretion since the defense did not call any psychiatric experts, and hence the People had nothing to rebut.

## Facts

Both the People and defense agree on the essential facts that on May 9, 2006 at 923 Kelly Street, Bronx, New York, Victor Gonzalez struck Mr. Lebron on the left side of his head at least 10 times with a hammer, and then stabbed Mr. Lebron four times in the left chest with a knife, penetrating the heart causing the death of Mr. Lebron. Thereafter, the defendant dismembered Mr. Lebron's body and packed the various parts in black plastic bags and then proceeded to remove the same from the apartment and drop said bags in different places within a four-block radius of 923 Kelly Street.

Both the People and the defense also agree that in a written statement, Mr. Gonzalez related the events that led to the argument with Mr. Lebron as well as the events that led him to hit Mr. Lebron with a hammer. Mr. Gonzalez related that he felt threatened by Mr. Lebron at the time and hence the reason why he armed himself with a hammer. In his video statement, Mr. Gonzalez related that Mr. Lebron who he worked with, tormented him at work and in Ms. Estrada's home, that he assaulted him physically, and that he feared for his safety.

## Procedural Facts

Before the start of trial, the defense served a notice of intent to proffer psychiatric evidence pursuant to Criminal Procedure

Law § 250.10 stating their intention to introduce psychiatric testimony to establish the affirmative defense of extreme emotional disturbance. Both sides secured psychiatric examination and reports and such were exchanged. Prior to the commencement of the trial, the defense withdrew their notice of intent to proffer psychiatric evidence.

During the trial, the written and videotaped statements by the defendant Mr. Gonzalez were admitted into evidence by the People. At the charging conference on April 6, 2009 and after the People rested, the defense requested the charge of extreme emotional disturbance (hereinafter EED). After oral arguments, this court determined that the People's evidence (videotaped, written statements and testimony) made out the elements of EED and hence granted the request to charge. After the court granted the defendant's request to charge EED, the People made an application to reopen their case and present their psychiatric evidence. The court heard extensive arguments from both sides and then permitted the People to reopen their case. After the ruling permitting the People to reopen their case, the defense withdrew its request for an EED instruction.

Finally, the jury was charged on the law which included a charge on justification and thereafter the jury returned a verdict of guilty of murder in the second degree.

## Arguments

The defense argues specifically that

I. "This court erred in ruling that the People may present expert psychiatric evidence to rebut its own evidence."

1. "Under the plain meaning of § 250.10 (1) the defendant did not 'proffer' any psychiatric evidence";

2. "The defendant is not required to serve notice of his intent to request a jury instruction based on evidence in the record";

3. "Under the plain meaning of § 250.10 (5) evidence offered by the People does not constitute 'other proof' ";

4. "Under the plain meaning of § 250.10 (5) requesting a jury instruction does not constitute 'other proof' ";

5. "Defendant did not waive his Fifth Amendment Privilege against self-incrimination when he withdrew his notice of intent and did not proffer psychiatric evidence at trial";

6. "The courts have never found a request for a jury instruction or evidence introduced by the People to be 'psychiatric evidence' under the meaning of § 250.10";

7. "This court's reliance on *People v. Berk* and NY Crim. Proc. Law § 60.55 was erroneous."

II. "Failure to provide the jury with an EED instruction constitutes reversible error and the verdict of guilty must be set aside."

On the other hand, the People argued that

1. "The defense abandoned their pursuit of an EED defense and therefore failed to preserve their claim for review as a matter of law on appeal which is fatal to a CPL 330.30 (1) motion."

2. "The defendant did not have the right to request a jury charge on Extreme Emotional Disturbance after having withdrawn notice of intent to introduce psychiatric evidence."

3. "The People have the right to rebut a claim of EED even if there was no independent evidence supplied by the defense."

4. "There was insufficient evidence to warrant a charge of EED."

In their reply memorandum, the defense emphasized that

1. "Defendant preserved his objection to [the] admission of psychiatric evidence."

2. "Defendant asserts that the 'plain language of CPL § 250.10 does not remotely suggest that the People's offering of evidence would trigger their right to introduce psychiatric evidence . . .' [m]oreover, CPL 250.10 must be construed in accordance with the fifth amendment."

## Discussion and Decision

CPL 330.30 (1) states that

"[a]t any time after the rendition of a verdict of guilty and before the sentence, the court may, upon motion of the defendant, set aside or modify the verdict or any part thereof upon the following grounds:

"1. Any ground appearing in the record which, if raised upon an appeal from a prospective judgment of conviction, would require a reversal or modification of the judgment *as a matter of law* by an appellate court." (Emphasis added.)

CPL 330.30 permits a trial judge to set aside a verdict only as a matter of law. However, the two prerequisites are that a judge makes an adverse ruling, which is error as a matter of law and the defense makes a timely objection to preserve the issue. In the matter before me, neither occurred.

After the People rested their direct case, the defendant requested a charge of extreme emotional disturbance and after considerable argument and research, the court ruled in the defense's favor and granted the defense's application. After granting the application, the People moved to reopen their case in order to call the psychologist who examined the defendant pursuant to the notice provision of CPL 250.10. The court in its discretion granted the People's application.

In this court's opinion, there were two separate applications, defendant's motion to charge EED which the court granted and the People's motion to reopen their case. The case law is clear that a judge has the discretion to permit a party to reopen its case "prior to summations . . . for a limited purpose occasioned by unexpected developments" (*People v Serrano,* 261 AD2d 197, 198 [1999]), providing it is not prejudicial to the other party.

Therefore, the court granted the defense's application to charge EED and exercised its discretion and granted the People's application to reopen their case.

Assuming arguendo, however, that there exists a "ground appearing in the record . . . which would require a reversal or modification of the judgment as a matter of law by an appellate court," defendant's motion would still have to fail.

> "The affirmative defense of extreme emotional disturbance has three principal components.
>
> "First, the defendant must have had an extreme emotional disturbance.
>
> "Second, in committing the homicide, the defendant must have acted under the influence of that extreme emotional disturbance.
>
> "Third, there must have been an explanation or excuse for such extreme emotional disturbance that was reasonable. The reasonableness of that explanation or excuse must be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be." (CJI2d[NY] Penal Law § 125.25 [1] [a] [Extreme Emotional Disturbance Defense].)
>
> "For the defendant to be entitled to a charge on extreme emotional disturbance, sufficient evidence must be presented to the jury to find by a preponderance of the evidence that the elements of the affirmative defense are satisfied. The defense requires proof of a subjective element (that the defendant in

fact acted under the influence of extreme emotional disturbance) and an objective element (that there was reasonable explanation or excuse for the emotional disturbance)." (*People v Moye*, 66 NY2d 887, 889-890 [1985] [citations omitted].)

In *People v Moye*, the facts were similar to the case at bar. Moye was accused of killing and dismembering the body of his victim. Specifically, the defendant in *Moye* was unable to perform sexually and the victim began to mock and taunt him. The defendant asked her to stop, but the victim refused and consequently, the defendant began to slash her across the chest and eventually cut the victim's head off. In his statement, the defendant stated that "I just went crazy and cut her head off"; "I kept slashing and slashing"; "something snapped"; he went "bananas"; and "I need help. I would like to have some help." Predicated solely on the People's case, the defendant requested a charge on EED which the court denied.

After trial, the defendant was convicted of murder in the second degree, the Appellate Division affirmed the defendant's conviction, however, the Court of Appeals reversed, holding, that there was sufficient evidence to submit to the jury the charge of extreme emotional disturbance so that the "jury might weigh the evidence presented as to both the subjective and objective elements of the defense, and the failure to do so requires a new trial." (*Id.* at 890.)

In the case before this court, the statements made by the defendant in the videotape as translated by the court's official translator and the evidence, provided both the subjective and objective elements of the defense of EED. Therefore, this court had the obligation to charge the jury on EED for their determination. At the charging conference, this court, relying on *Moye*, granted the defense's motion to submit the charge of EED to jury. At that point, the People moved to reopen their case to present the psychiatric evidence that had been garnered prior to trial. The issue to be decided by this court, therefore, is whether the People can reopen their case to present psychiatric evidence testimony when the defendant relies solely on the People's case to establish both the objective and subjective elements of EED. This issue is apparently one of first impression.

Although the *Moye* court decided that the People's direct case provided both the subjective and objective elements of section 125.25 (1) (a) to mandate the trial judge to charge the jury on EED, they did not address the notice requirements of section

250.10, nor the procedure to be followed. The court left unanswered the very questions that this court must answer: (1) whether relying solely on the People's case requires section 250.10 notice; (2) whether the court can permit the People to reopen their case to present psychiatric evidence to rebut the defense's offer of EED, when the defense relies solely on the People's direct case; and if so (3) what evidence would be admissible and what procedures should be employed.

Criminal Procedure Law § 250.10 states that "psychiatric evidence" is not admissible unless the defendant serves a written notice of intent to proffer such testimony. CPL 250.10 (1) (b) defines "psychiatric evidence" as:

"(a) Evidence of mental disease or defect to be *offered by the defendant* in connection with the affirmative defense of lack of criminal responsibility by reason of mental disease or defect.

"(b) Evidence of mental disease or defect to be *offered by the defendant* in connection with the affirmative defense of extreme emotional disturbance . . .

"(c) Evidence of mental disease or defect to be *offered by the defendant* in connection with any other defense not specified in the preceding paragraphs." (Emphasis added.)

*People v Diaz* (62 AD3d 157 [2009]) is extremely instructive and persuasive authority to our issues. In *Diaz*, the Appellate Division, Second Department thoughtfully examined the case law involving CPL 250.10. The court was prompted to answer the question of whether a defendant who only offers lay testimony in support of the defense of EED is required pursuant to CPL 250.10 to serve and file a notice of intent to proffer psychiatric evidence and to submit to an examination by a psychiatrist designated by the People.

*Diaz* involved a defendant who strangled his former girlfriend to death. Defendant testified that the night of the murder, he visited the victim at her apartment where he beat and strangled her after an argument. The defendant testified that the victim had told him that the youngest of his two children had been fathered by another man which in the defendant's words made him go "crazy."

On the eve of trial Supreme Court Justice John M. Leventhal granted the defendant leave to serve a late notice of intent pursuant to CPL 250.10. Thereafter the People requested that

the defendant be examined by their own expert, which the defense objected to because the defendant intended to establish EED through lay testimony only. The court permitted the examination of the defendant by the People's own expert. Judge Leventhal issued a written decision determining the "admissib[le] and permissible scope of the People's expert testimony" (*id.* at 159) and found that "the court-ordered examination did not violate the defendant's Fifth Amendment right against self-incrimination because the testimony of the People's expert would only be admissible if the defendant waived that right by testifying to a mental state or to facts which the jury could infer his EED defense." (*Id.* at 160.)

The Appellate Division affirmed Judge Leventhal's holding and further expressed that

> "if the defendant can raise the defense of EED through the submission of lay testimony, the People must be given an opportunity to counter that defense with relevant information from any source. To hold otherwise would allow a defendant to interpose the defense of EED on the eve of trial, as did the defendant here, without affording the People the opportunity to obtain evidence to counter the defense, thereby placing them at an unfair disadvantage." (*Id.* at 163, citing *People v Berk*, 88 NY2d 257 [1996]; *People v Felix*, 232 AD2d 228 [1996].)

Although in our present case, unlike the defendant in *Diaz*, the defense presented their request at the end of the People's case at a charging conference, the principle of affording the People an opportunity to "counter the defense" remains the same. It is clear that presenting lay testimony, i.e., defendant's own statements, does not preclude the People from seeking expert testimony, it is also clear that the use of lay testimony requires notice per CPL 250.10, if that defendant seeks to interpose the defense of EED. Therefore, it is not outside the scope of reasonableness and fairness, nor is it contrary to case law to allow the People to reopen their case to present their expert testimony. When a defendant makes an application to the court to charge the defense of EED on the basis of the defendant's own statement and the facts of the case, it is this court's opinion that the defense is offering them in support of his application for an EED charge.

In the instant case, prior to the start of trial, the defense complied with CPL 250.10 and both sides had an opportunity to

seek their own expert testimony. Then the defense withdrew its notice, which the People took to indicate that the affirmative defense of EED was not going to be an issue throughout the trial and hence fashioned their strategy accordingly. Now, upon this court granting the defense's request to charge EED, the door swung open for the defense to tailor their summation to fit that particular charge. In effect, creating the perception of an unrebuttable inference. Permitting this one-sided inference would have placed the People at an "unfair disadvantage." The court, therefore, had an obligation to allow the People to offer its expert to rebut this inference thus, presenting to the jury two sides of this particular issue.

It is this court's opinion that the request to charge EED by the defense was both a request to charge and notice of intent to proffer evidence of EED. Practically speaking and within the context of the subject trial, the defense could not have predicted whether the defendant's videotaped admission would be used by the People. Further, without the confession the subjective and objective elements of EED would have been nonexistent. The use by the People of defendant's own statements as confessions of guilt, gave the defense the opportunity to recharacterize the statement and proffer their own client's statements as evidence of EED and to pursue the affirmative defense of EED. The request to charge EED, served as notice to the People of the defense's intent to offer the defendant's statements in support of the affirmative defense of EED. In effect, the requirements of section 250.10 were met. Pursuant to section 250.10, once notice is given, the People have the right to have the defendant examined and call witnesses to rebut the affirmative defense. In our case, because, the defendant had already been examined pursuant to the prior notice, there was no prejudice to either party, nor undue delay of the trial.

Upon the court granting the People's motion to present their expert witness, the defense withdrew their motion to have a charge of EED submitted to the jury. Therefore, this court does not agree with the defense's interpretation that there was an outright denial of their request to charge and that the issue was preserved for appeal.

This court's determination is consistent with the intent behind CPL 250.10 which involves the concept of "basic fairness." (CPL 240.45.) To permit the defense to recharacterize the defendant's statement and offer it as evidence of EED and not permit the People the opportunity to present relevant evi-

dence to rebut the offer, would open up a Pandora's box that would eviscerate the very intent and spirit of the law, undermine the concept of justice and be utterly unfair to the People. (*People v Berk*, 88 NY2d 257 [1996].) Further, it would create a precedent that would permit the defense to avoid their obligation to give notice under section 250.10, deny the People their right to examine the defendant and permit the EED to go unchallenged. This could not have been the intent of the Legislature, nor the spirit of the law. The very essence of CPL 250.10 seeks to insure that the defense and the People are afforded a fair trial and safeguard the orderly and expeditious disposition of cases.

## Conclusion

Accordingly, defendant's motion to set aside the verdict pursuant to CPL 330.30 (1), 330.40 and 330.50 is hereby denied.