People v J.C. (2024 NY Slip Op 50307(U))

[*1]

People v J.C.

2024 NY Slip Op 50307(U)

Decided on March 13, 2024

County Court, Putnam County

Molé, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 13, 2024
County Court, Putnam County

The People of the State of New York,

against
J.C., Defendant.

Indictment No. 70814-23

PUTNAM COUNTY DISTRICT ATTORNEY'S OFFICE
Attn: Chief ADA Chana G. Krauss
40 Gleneida Avenue
Carmel, NY 10512
Email: ckrauss@putnamda.org
PAT BONANNO, ESQ.
Assigned Counsel for Defendant 
175 Main Street — Suite 507
White Plains, NY 10601
Email: pbonannoesq@aol.com

Anthony R. Molé, J.

The following papers were read and considered on the motions made by the People of the State of New York, pursuant to CPL 245.40 (1), for an order to compel defendant J.C. to submit to a buccal saliva swab (mot. seq. no. 1); and pursuant to CPL 250.10 (3), to have defendant examined by their own psychiatrist or a licensed psychologist in connection with defendant's written notice of intent to present a psychiatric defense (mot. seq. no. 2):
Motion Papers:
• Seq. No. 1: Notice of Motion; People's Affirmation in Support; Unmarked Attachments
• Seq. No. 2: Notice of Motion; People's Affirmation in Support; Unmarked Attachments
• Affirmations in Response of Defense Counsel
Upon review of the foregoing papers, the Court finds and determines as follows:
By way of background, defendant was charged in a felony complaint with murder in the second degree for allegedly killing his father on September 10, 2023 during an ensuing physical altercation. That charge was initially brought in the Justice Court of the Town of Patterson. The Patterson Town Judge ordered an examination pursuant to CPL article 730 to assess defendant's competency to proceed (see CPL 730.30 [1]). Two psychiatric examiners evaluated defendant and concluded that he is an "incapacitated person" (CPL 730.10 [1]; see CPL 730.30 [3]).
On December 4, 2023, defendant was indicted on three charges: murder in the second degree (count one), manslaughter in the first degree (count two), and assault in the first degree (count three). He was arraigned upon the indictment on December 13, 2023, and entered a plea of not guilty. Based on the 730 examination findings that defendant is unfit to stand trial, this Court adjudged defendant to be an incapacitated person within the meaning of CPL 730.10 (1).[FN1]
Consequently, the Court issued an order of commitment, committing him to the custody of the Commissioner of the New York State Office of Mental Health (see CPL 730.50 [1]). Since that time, defendant has been in the custody of the Commissioner at Mid-Hudson Forensic Psychiatric Center.
On January 23, 2024, the People filed a motion, under CPL 245.40 (1), for an order to compel defendant to submit to a buccal saliva swab for purposes of obtaining his DNA (Deoxyribonucleic Acid). Shortly thereafter, the People filed a motion pursuant to CPL 250.10 (3) to have defendant examined by their own psychiatrist or a licensed psychologist in light of defendant's written notice of intent to present a psychiatric defense (see CPL 250.10 [2]).
Defendant opposes the former motion but does not oppose the latter.[FN2]
Both motions are fully submitted for determination. The Court will address each in turn.
I. The People's Motion to Collect a DNA Sample from Defendant
Turning first to the People's application for a buccal swab, CPL 245.40 (1) (e) states that "[a]fter the filing of an accusatory instrument, and subject to constitutional limitations, the court may, upon motion of the prosecution showing probable cause to believe the defendant has committed the crime, a clear indication that relevant material evidence will be found, and that the method used to secure such evidence is safe and reliable, require a defendant to provide non-testimonial evidence, including to . . . [p]ermit the taking of samples of the defendant's blood, hair, and other materials of the defendant's body that involves no unreasonable intrusion thereof" (emphasis added).
Although CPL 245.40 was enacted in 2020, the necessary showing by the prosecution to permit the taking of corporeal samples from a defendant has existed since 1982 based on the Court of Appeals' seminal decision in Matter of Abe A. (56 NY2d 288 [1982]). Now, CPL 245.40 (1) (e) explicitly codifies a method to obtain corporal evidence from a criminal suspect. That statute covers applications like the one here that are made post indictment. The Court of Appeals' guidelines permit a trial court to order a defendant to provide non-testimonial evidence upon the filing of an indictment where the People meet the three-prong test codified in CPL 245.40 (1) (e).
Pursuant to the guidelines established by the Court of Appeals, a court order to obtain a bodily sample from a suspect may be issued if the People establish (1) probable cause to believe the suspect has committed the crime, (2) a "clear indication" that relevant material evidence will be found, and (3) the method used to secure it is "safe and reliable" (Matter of Abe A., 56 NY2d [*2]at 291). Further, "the issuing court must weigh the seriousness of the crime, the importance of the evidence to the investigation[,] and the unavailability of less intrusive means of obtaining it, on the one hand, against concern for the suspect's constitutional right to be free from bodily intrusion on the other" (id.; see also CPL 245.40 [1] [e]; Matter of Miller v Foley, 145 AD3d 1011, 1011 [2d Dept 2016]).
Here, among other items, several pieces of defendant's clothing from the day in question were submitted to the New York State Police Forensic Investigation Center (FIC) for processing who, thereafter, issued two reports on the collected evidence. FIC's report from October 11, 2023 states, inter alia, that defendant's shirt, shorts, and left shoe were positive for blood based on a presumptive screening test.
A separate report from FIC, dated November 13, 2023, reflects that a DNA extraction procedure was performed on those and other items using the polymerase chain reaction (PCR) amplification method; and the results are consistent with and match the victim as the donor and an unknown donor. This prompted the People to make this application.
The People assert that a DNA sample from defendant is necessary so that the FIC can conduct further testing and analysis since the DNA results are "consistent with two donors." Defendant, in opposition, contends that a court-ordered DNA sample would constitute an involuntary submission of physical evidence collected from him that may tend to incriminate him. He suggests that the People are embarking on a fishing expedition in the hopes of trying to prove their case based on a theory that his DNA sample may show that he is a contributing donor to the tested swabs. Defendant thus argues that the People's application is improper, inasmuch as they are hoping that his DNA may probably match the samples on the evidence collected by police.
Upon balancing the severity of the crime, the importance of the evidence to the investigation, and the unavailability of less intrusive means of obtaining it, against a concern for defendant's constitutional right to be free from bodily intrusion, the Court directs the taking of a saliva sample from defendant for DNA purposes (see Matter of Abe A., 56 NY2d at 291; Matter of Thomas v Nelson, 160 AD2d 1010, 1011 [2d Dept 1990], lv denied 76 NY2d 703 [1990]).
Defendant is the primary suspect in a homicide investigation. The charges in this case stem from accusations that defendant allegedly killed his father during a physical altercation by bludgeoning him with a large stick of wood. According to the People's moving papers, the victim was found dead when police arrived with wood shard sticking out of his forehead. At the scene, police recovered several items, including various items of defendant's clothing, a large branch, and pieces of wood. There is a high probability that seminal material will be found based upon appropriate testing to compare defendant's DNA characteristics with that material (see Matter of Anonymous v Cacciabaudo, 153 AD2d 856, 857 [2d Dept 1989], lv dismissed 74 NY2d 890 [1989]).
Defendant does not dispute that the People's moving papers establish probable cause and that a buccal swab is a safe and reliable method of obtaining a bodily sample; rather, he takes issue that the People are trying to obtain corporeal evidence from him. Contrary to defendant's supposition that the People are engaged in a fishing expedition, it cannot be denied that the People had "probable cause" to believe defendant murdered the victim. Usually, "facts which would establish probable cause will also tend to establish the high degree of relevance the nontestimonial evidence sought would have" (People v Flores, 65 Misc 3d 971, 973 [Sup Ct, Bronx County 2019]).
Probable cause "may be supplied, in whole or part, through hearsay information," provided that the hearsay information satisfies the Aguilar-Spinelli test (People v Johnson, 66 NY2d 398, 402 [1985]). As alleged in their moving papers, defendant's mother—the victim's spouse—called 911 to report that defendant had killed the victim after a violent physical altercation ensued in the driveway of their home. The People also aver in their moving papers that after defendant was arrested, he told police that the victim had initially attacked him with a piece of wood, prompting him to "hit the [victim] with the stick multiple times." Defense counsel states in responsive papers that defendant "has a long history of . . . mental health issues." The People have established a factual link suggesting that defendant's DNA will likely appear or match with the evidence subjected to testing and analysis.
Notably, defendant provided police with an inculpatory statement implicating himself in the homicide. Traces of blood were recovered at the crime scene. The FIC's testing reveals that the blood tested matches the victim's blood. Given that the People have shown evidence had been secured from the crime scene, as well as near the vicinity of where the altercation occurred, which the People seek to match defendant's DNA, the People sufficiently established a "clear indication" that the buccal swab sample would supply relevant material evidence (see People v Watkins, 180 AD3d at 1231). The DNA evidence recovered from the crime scene gives further indication that material evidence could be expected to result from a comparison between that evidence and defendant's own DNA (see id.; People v Pryor, 14 AD3d 723, 725 [3d Dept 2005], lvs denied 6 NY3d 779, 2006]).
Furthermore, defendant has been indicted by a grand jury—which already found that there was probable cause to believe that he committed the crimes with which he is charged (see People v London, 124 AD2d 254, 256 [3d Dept 1986], lv denied 68 NY2d 1001 [1986]; People v Fisher, 71 Misc 3d 1051, 1056 [Sup Ct, Bronx County 2021]). The grand jury's indictment of defendant provides the requisite probable cause and statutory authority for a DNA swab; thus, there is a reasonable basis to have defendant submit to the taking of buccal swab samples of his saliva and mouth (see People v Roshia, 133 AD3d 1029, 1030 [3d Dept 2015], affd 28 NY3d 989 [2016]). Considering the totality of the evidence presented, the Court holds that the People have established "probable cause" to believe that defendant committed the charged crimes based on the victim's death (see id.; People v Brown, 70 AD3d 1302, 1303 [4th Dept 2010], affd 17 NY3d 742 [2011]).
Similar to Abe A. where the respondent was "the only suspect" in a murder investigation where collection of the respondent's blood sample was compelled, defendant is the sole suspect here and there is "evidence of a violent struggle" between he and the victim (see Matter of Abe A., 56 NY2d at 291-292). Akin to that case, there is a "clear indication" that "relevant material evidence will be found" by compelling defendant to provide his DNA sample (Matter of Abe A., 56 NY2d at 291). The requirement that there be a clear indication that the DNA swab will provide material evidence is to guard against "fishing expeditions" (id. at 297). A comparison of defendant's DNA from the buccal swab would be relevant and material to both the People and defense in either implicating or perhaps exonerating defendant. Forensic evidence being gathered in an ongoing investigation does not alter the conclusion that there is a "clear indication" that relevant material will be found through DNA analysis based upon the underlying incident on the day in question.
The Court is unpersuaded by defendant's further contention that a buccal swab is unnecessary because his DNA "may already" be "on file" as previously being added to the [*3]"NYS Databank" due to his "long history of medical and mental health issues" (see People v Watkins, 180 AD3d 1222, 1231 [3d Dept 2020], lvs denied 35 NY3d 1026, 1030 [2020]; People v Pitt, 61 Misc 3d 252, 253-254 [Co Ct, Orange County 2018]).
While defendant has a constitutional right to be free from bodily intrusion, the Court has balanced the seriousness of the alleged crimes, the significance of the evidence to the investigation, and the unavailability of a less intrusive means of obtaining such evidence from him, consisting of a unique and personal nature (see Matter of Miller v Foley, 145 AD3d at 1011-1012; Matter of Edwards v DeRosa, 98 AD3d 979, 979 [2d Dept 2012]). The People have satisfied their burden to compel defendant to submit a saliva sample, via buccal swab, in order to be used for DNA testing. Surely, a routine cheek swab is a "safe and reliable" method of obtaining defendant's DNA sample.
To the extent defendant asks for a protective order in this regard, that relief is not properly before the Court given that defendant did not file a cross motion squarely requesting such affirmative relief. Even if it was, an application for a protective order would be denied on the merits (see People v Rogers, 77 Misc 3d 182, 190-194 [Sup Ct, Erie County 2022]; People v Lora, 72 Misc 3d 1223[A], *2-3 [Sup Ct, NY County 2020]; People v Belliard, 70 Misc 3d 965, 969-972 [Sup Ct, NY County 2020]; People v White, 60 Misc 3d 304, 305-310 [Sup Ct, Bronx County 2018]; see also CPL 245.40 [2]; 245.70). Defendant does not retain a Fourth Amendment privacy interest in a buccal swab sample after it is taken (see Maryland v King, 569 US 435, 463-465 [2013]; People v Rogers, 77 Misc 3d at 192-193; People v K.N., 62 Misc 3d 444, 458-459 [Crim Ct, NY County 2018]).
A. Collection of Defendant's DNA by Buccal Swab
When buccal swabs are taken, cells are collected from inside a person's cheek using a long cotton swab. As for the method to be used to secure defendant's saliva for DNA collection, it has been accepted scientifically, and approved legally, that applying buccal swabs is safe, reliable, and minimally intrusive.
Indeed, the Supreme Court of the United States has characterized the buccal swabbing procedure as a "brief and . . . minimal intrusion" that is "quick and painless," and expressed that a reasonable expectation of an individual's privacy is not offended by the "minor intrusion of a brief swab of [the] cheeks" (Maryland v King, 569 US 435, 463, 465 [2013]). And giving more credence to this view, the Court of Appeals has too recognized as much, observing that a buccal swab is "now a simple and common method" and "is undeniably safe, consists of a minimal intrusion[,] and involves no discomfort" (People v Goldman, 35 NY3d 582, 594 [2020]). In fact, "[n]o less-intrusive alternative means for obtaining such evidence has been approved" yet (People v Fortuna, 78 Misc 3d at 386).
In their motion papers, the People represent that an investigator from the New York State Police will collect a saliva sample from defendant by swabbing the interior of his mouth with cotton/buccal swabs using a specimen collection kit. The preferred specimen collection technique for DNA testing is by buccal swab vis-à-vis cheek or mouth cavity because it is noninvasive, painless, and easier to collect and transport.
To the extent that the People request the order "contain an explicit authorization" for the collector to use "force if necessary," the Court finds that their motion papers are devoid of a sufficient factual basis to support the issuance of a force order to conduct a buccal swab of defendant (see People v Lewis, 35 Misc 3d 1216[A], *3 [Crim Ct, Kings County 2012]; see also People v Rodriguez, 59 Misc 3d 1212[A], *4 [Sup Ct, Kings County 2018]; compare People v [*4]Williams, 163 Misc 2d 212, 215, 219-220 [Co Ct, Westchester County 1994], affd 244 AD2d 587 [2d Dept 1997]). Additionally, the People's request for a force order is premature given that no basis has been established that defendant is unwilling to comply with the court-ordered swab (see People v Lora, 72 Misc 3d 1223[A], *1 [Sup Ct, NY County 2020]; People v Flores, 61 Misc 3d 1219[A], *9 [Crim Ct, NY County 2018]; cf. People v Cherry, 34 Misc 3d 1235[A], *1-2 [Crim Ct, Kings County 2012]).
The People's motion is therefore granted. Defendant is directed to provide a buccal swab for DNA testing (see Matter of Abe A., 56 NY2d at 288; People v Fisher, 71 Misc 3d at 1056).
Defendant shall comply and submit to the court-ordered buccal swab without any resistance in what is a speedy and simple procedure. Given defendant's commitment at Mid-Hudson Forensic Psychiatric Center, the People shall provide defense counsel at least 48 hours advance notice thereof. The People's accompanying proposed order in this respect is being issued herewith.
II. The People's Motion for a CPL 250.10 (3) Examination
Next, the People move, pursuant to CPL 250.10 (3), to have defendant examined by a psychiatrist or a licensed psychologist of their choice. That statute allows the People to make this formal application with the court.
Under CPL 250.10 (2), "[p]sychiatric evidence is not admissible upon a trial unless the defendant serves upon the [P]eople and files with the court a written notice of his intention to present psychiatric evidence." "Such notice must be served and filed before trial and not more than [30] days after entry of the plea of not guilty to the indictment" (CPL 250.10 [2]). Under CPL 250.10 (3), "[w]hen a defendant, pursuant to [CPL 250.10 (2)], serves notice of intent to present psychiatric evidence, the district attorney may apply to the court, upon notice to the defendant, for an order directing that the defendant submit to an examination by a psychiatrist or licensed psychologist."
Here, defendant provided the People with timely notice of his defense(s) "before trial and not more than 30 days after entry of the plea of not guilty to the indictment" (CPL 250.10 [2]). Defendant entered his not guilty plea on December 13, 2023. He filed the initial CPL 250.10 notice on January 9, 2024, followed by a first supplemental notice on January 10, 2024.
The People, in turn, filed its motion under CPL 250.10 (3) on January 30, 2024. "[T]he People's right to demand an adversarial examination of the defendant by a psychiatrist or psychologist of their choice is not triggered until after the defendant gives notice" (People v White, 75 AD3d 109, 124 [2d Dept 2010], lv denied 15 NY3d 758 [2010]). The statutory provision contains no express time limit for the application, after which the court can then direct the defendant to submit to a psychiatric examination by the People's expert (see CPL 250.10 [3]; People v Wong, 174 AD3d 436 [1st Dept 2019], lv denied 34 NY3d 955 [2019]). The People endeavor to conduct such an examination to evaluate defendant's psychiatric evidence and any affirmative defense(s) he is raising by potentially countering it with their own expert evidence.
Defendant does not oppose that motion. He requests that his counsel be present for the examination which, under the statute, is a mandatory right (see CPL 250.10 [3] ["defendant has a right to have his counsel present at such examination," which is of "an observer, and neither counsel shall be permitted to take an active role at the examination"]). A review of the procedure in CPL article 250 reflects that both sides may be present at a CPL 250.10 examination (see id.).
The People's motion predicated on CPL 250.10 (3) is thus granted without opposition. The Court directs defendant to submit to the psychiatric examination by the People's expert (see [*5]People v Diaz, 62 AD3d 157, 163 [2d Dept 2009], affd 15 NY3d 40 [2010]). Defense counsel may be present at the CPL 250.10 examination. The proposed order submitted in connection with the People's CPL 250.10 (3) application shall be executed and issued herewith. Any other relief requested that is not expressly addressed herein is otherwise rendered academic and denied. It is hereby:
Ordered that the People's motion, made pursuant to CPL 245.40 (1), for an order to compel defendant J.C. to submit to a buccal saliva swab is GRANTED (mot. seq. no. 1); and it is further
Ordered that the People shall provide 48 hours advance notice to defense counsel before having defendant submit to the taking of buccal swab samples of his saliva and mouth; and it is further
Ordered that the People shall have an investigator from the New York State Police, or other appropriate law enforcement authority, available for the taking of saliva samples from defendant J.C.; and it is further
Ordered that the People's motion, made pursuant to CPL 250.10 (3), to have defendant examined by a psychiatrist or a licensed psychologist is GRANTED without opposition (mot. seq. no. 2).
The People's accompanying orders submitted in connection with their motions are being executed and issued herewith in accordance with the findings and determinations made herein.
This constitutes the opinion, decision, and order of the Court.
Dated: March 13, 2024
Carmel, New York
E N T E R:
Hon. Anthony R. Molé
Judge of the County Court

Footnotes

Footnote 1:An incapacitated person "means a defendant who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense" (CPL 730.10 [1]).

Footnote 2:The Legal Aid Society was relieved of defendant's representation on February 16, 2024. New counsel, appointed for defendant pursuant to County Law article 18-B, filed answering papers on behalf of him in responding to the subject motions.