People v Bender (2026 NY Slip Op 01444)

People v Bender

2026 NY Slip Op 01444

Decided on March 17, 2026

Court of Appeals

Garcia, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 17, 2026

No. 16 

[*1]The People & c., Respondent,
vDonald Bender, Appellant.

Michael J. Hutter, for appellant.
Daniel J. Young, for respondent.

GARCIA, J.:
Defendant was convicted of reckless endangerment in the first degree, which required the jury to find beyond a reasonable doubt that, "under circumstances evincing a depraved indifference to human life, [defendant] recklessly engage[d] in conduct which create[d] a grave risk of death to another person" (Penal Law § 120.25). He maintains that the evidence at trial was legally insufficient to support a finding that he acted with depraved indifference. Defendant also argues that County Court abused its discretion by precluding certain psychiatric evidence at his trial because of his untimely notice under CPL 250.10. We hold that the evidence was legally sufficient to establish the necessary mens rea and that the trial court did not abuse its discretion in precluding defendant's psychiatric testimony and therefore affirm.
Depraved indifference is a culpable mental state that "is best understood as an utter disregard for the value of human life—a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (People v Suarez, 6 NY3d 202, 214 [2005]). Whether a defendant's conduct demonstrates depraved indifference is a "highly fact-specific" inquiry, one focused on determining if the defendant consciously disregarded a serious risk of death to others while continuing to engage in reckless conduct "with an appreciation of the grave risks involved in that behavior" (People v Heidgen, 22 NY3d 259, 276, 277 [2013]).
Defendant was convicted of first-degree reckless endangerment and that verdict will be considered legally sufficient if "viewing the facts in a light most favorable to the People, there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a [*2]reasonable doubt" (People v Danielson, 9 NY3d 342, 349 [2007] [internal quotation marks and citations omitted]). Viewed under this standard, the trial testimony here provided sufficient proof for a rational jury to conclude that defendant demonstrated depraved indifference to human life.
The People introduced testimony from multiple witnesses who observed defendant driving erratically, "weaving" between lanes in heavy traffic, eyes open, and with a "look of rage on his face." Over approximately three-tenths of a mile, defendant struck three vehicles, drove through a parking lot, and ultimately crashed into a house. Defendant began this course of conduct by making a "sharp right" directly into a tow truck, causing defendant's vehicle to "lock[]" onto a car being towed and to "hang[]" from the wheel lift of the truck. After defendant's vehicle "shook loose" from the tow truck, defendant "sped up" and "proceeded to take off" and a short time later he crashed into the rear of a van with such force that the driver hit his head on the roof. The driver felt defendant's vehicle "pushing" him down the road. Other witnesses provided a similar description of defendant, with his hands on the steering wheel, appearing to intentionally hit the van "again and again and again," "pushing" it forward. Defendant next crashed into the back of a third vehicle, then side-swiped the driver's side, causing the vehicle to "hit the curb" and to "flip[] over on its roof." A fire hydrant pierced the roof of the car one foot from the driver's head. Defendant "took off [] fast" from this crash, drove over a sidewalk, through a motel parking lot, and crashed directly into a house, causing it to shake upon impact. Two people were inside the house at the time and heard "screeching tires" as the car approached. Crash data from the vehicle's air bag control module showed that the brakes were not applied in the eight seconds prior to impact with the house. From this course of conduct, and the multiple witnesses who testified about defendant's actions and demeanor, a rational jury could have concluded that defendant was aware of the risks involved in his behavior and acted without regard for whether the drivers of those vehicles, any pedestrians who might have been in the parking lot, or the people inside the house, lived or died and that, in sum, defendant displayed depraved indifference to human life.
We agree with the majority at the Appellate Division that there is no checklist of factors for this analysis, and the absence of specific circumstances found in other depraved indifference cases, such as running red lights or driving into oncoming traffic, is not determinative (see 236 AD3d 1184, 1187 [3d Dept 2025]). Where the evidence viewed under the proper standard establishes that the defendant engaged in reckless conduct, "appreciate[ed] [] the grave risks involved in that behavior[,]" and yet continued to engage in such behavior with "complete disregard for the value of the lives that are thereby endangered" (Heidgen, 22 NY3d at 277), the depraved indifference standard has been met, as it was here.
Defendant next argues that County Court abused its discretion when it precluded him from introducing psychiatric testimony and thereby deprived him of his constitutional right to present a defense. CPL 250.10 sets out the procedure that a defendant must follow to introduce psychiatric evidence in connection with a defense at trial. Under the statute, "[p]sychiatric evidence is not admissible upon a trial unless the defendant serves upon the people and files with the court a written notice of his intention to present" such evidence (CPL 250.10 [2]). The "notice must be served and filed before trial and not more than thirty days after entry of the plea of not guilty to the indictment" (id.).
"[T]he governing principle animating CPL 250.10 is 'procedural fairness and orderliness' with the intention of 'eliminating the element of surprise' for the prosecution" (People v Sidbury, 42 NY3d 497, 506 [2024], quoting People v Almonor, 93 NY2d 571, 577-578, 581-582 [1999] [internal citations omitted]). Accordingly, where a defendant fails to comply with the notice requirement, preclusion of psychiatric evidence may be appropriate, particularly where the delay is due to " 'willful misconduct' " by the defendant, and "a less severe penalty would 'perpetuate rather than limit the prejudice to the State and the harm to the adversary process' " (Sidbury, 42 NY3d at 508, quoting Michigan v Lucas, 500 US 145, 152-153 [1991] [internal citation omitted]).
The statute's timing requirement may, however, be relaxed at the discretion of the court "[i]n the interest of justice and for good cause shown" (CPL 250.10 [2]). Given that the "[e]xclusion of relevant and probative testimony as a sanction for a defendant's failure to comply with a statutory notice requirement implicates a defendant's constitutional right to present witnesses in his own defense" (People v Berk, 88 NY2d 257, 266 [1996]), to aid in this discretionary determination, "the trial court must 'weigh [the defendant's constitutional] right against the resultant prejudice to the People from the belated notice' " (Sidbury, 42 NY3d at 507, quoting Berk, 88 NY2d at 266). Defendant does not dispute that he failed to comply with CPL 250.10's notice requirement but claims that County Court abused its discretion in refusing to excuse the late filing. We reject that argument.
Defendant was arraigned on November 12, 2019. His trial was originally scheduled for April 13, 2020, but was delayed because of the COVID-19 pandemic, eventually being rescheduled for May 24, 2021. Defendant did not seek permission to file late notice until May 18, 2021, six days prior to his May 24, 2021 trial date. During the intervening time, defendant made clear that his defense at trial would be based on his sleep apnea and excessive daytime sleepiness diagnoses. However, several weeks before trial, on April 8, 2021, defense counsel provided the People with an "Expert Witness Summary" that included witnesses that would testify regarding defendant's "mental health" diagnosis and "defendant's medical history as it relates to mental health and sleep disorders." On April 18, 2021, during a phone call, defense counsel disclosed that he just learned about a correlation between defendant's bipolar condition and the effect it could have on defendant's sleep disorders and stated that he intended to call one of those expert witnesses in support of a defense that defendant's actions were the result of a manic episode brought on by his bipolar disorder. Despite the call, with trial more than four weeks away, defendant still did not serve the required CPL 250.10 notice.
Several weeks later, on May 13, 2021, the People moved to preclude the introduction of the new psychiatric evidence premised on defendant's bipolar disorder for lack of notice, asserting that they were prejudiced by the shifting trial strategy because they were deprived of the opportunity to have an independent expert examine defendant and to review defendant's complete mental health records. On May 18, 2021—six days prior to the start of his trial—defendant cross-moved asking the court to deny the People's motion and to grant defendant permission to file a late CPL 250.10 notice for good cause due to, among other things, the COVID-19 pandemic and because defendant only learned of the new psychiatric evidence in April 2021. Defendant confirmed that the "crux" of his defense was based on his sleep disorder and asserted that he sought to introduce evidence of his bipolar diagnosis to explain the role it played relative to that condition. Defendant attached a proposed notice to the motion, which stated only that: "pursuant to Criminal Procedure Law Sections 250.10 (1) (A) and (B), the defendant intends to offer psychiatric evidence at trial in the above captioned indictment."
County Court permitted defendant to introduce medical evidence in support of his sleep disorder defense but precluded him from offering the unnoticed psychiatric evidence of his bipolar disorder in support of that defense. In doing so, the Court properly considered, and rejected, defendant's good cause arguments, concluding that the pandemic did not excuse defendant's failure to file notice because it may have impacted in-person appearances but did not explain why defendant did not email or otherwise submit the required notice. Moreover, the Court determined that there "was absolutely no good cause shown as to why notice was not immediately given after" defendant learned of the psychiatric evidence on April 18, 2021. As the Court explained, had defendant provided the requisite notice at that point, the People would have had a month to prepare, but instead, for no apparent reason, defendant waited until just days prior to his trial to do so thereby depriving the People of the opportunity to conduct an independent examination of defendant and to review defendant's mental health records. The Court considered this prejudice to the People in conjunction with defendant's failure to establish any good cause for the delay and appropriately exercised its discretion in granting the People's motion to preclude and in denying defendant's cross-motion to serve late notice. Accordingly, we agree with the Appellate Division that County Court did not abuse its discretion by precluding defendant's psychiatric evidence relating to his bipolar disorder pursuant to CPL 250.10 (see 236 AD3d at 1189).
Defendant's remaining contention is without merit.
Accordingly, the order of the Appellate Division should be affirmed.
Order affirmed. Opinion by Judge Garcia. Chief Judge Wilson and Judges Rivera, Singas, Cannataro, Troutman and Halligan concur.
Decided March 17, 2026